omission and why the special charge requested should be given covering the point, that we deem it unnecessary to take up appellant's complaint in this way to some features of the court's charge. Giles v. State, 148 S. W. 320; Perkins v. State, supra; Mealer v. State, 145 S. W. 354.

[7] The only other question raised and necessary to be decided is appellant's contention that the indictment herein did not authorize the court to submit to the jury in its main charge the question of aggravated assault and battery, on the statute so providing above quoted, because there was no allegation in either of the counts in the indictment charging that an assault and battery was committed in a private residence. Both the statute and the uniform decisions of this court thereunder are expressly against appellant and need no discussion. Article 771, C. C. P., is: "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information." And the next article is: "The following offenses include different degrees: Subdivision 2. An assault with intent to commit any felony, which includes all assaults of an inferior degree." And article 837, C. C. P., prescribes on what grounds a new trial may be granted and for no other. Subdivision 9 says: "Where the verdict is contrary to law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as, the offense proved." See Lacoume v. State, 143 S. W. 626, and cases therein cited.

The judgment is affirmed.

---

## SNELL v. HAM.

(Court of Civil Appeals of Texas. Amarillo. Nov. 16, 1912. Rehearing Denied Dec. 14, 1912.)

1. APPEAL AND ERROR (§ 76*)—FINAL JUDGMENT.

The fact that a judgment was entered nunc pro tunc did not affect its finality.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 426–443; Dec. Dig. § 76.*]

2. PARENT AND CHILD (§ 3*)—PARENTS NEEDED TO SUPPORT—CONTRACT FOR NECESSARIES.

A parent is under a legal and moral duty to support minor children; and while he can only be charged for necessaries furnished by a stranger for his minor child by his express or implied promise to pay, such promise may be inferred from his legal duty to furnish necessaries.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

3. PARENT AND CHILD (§ 3*)—ACTIONS AGAINST PARENT—INSTRUCTIONS—PROMISE TO PAY.

In an action against a father for wearing apparel furnished to a minor child, the court charged that, to entitle plaintiff to recover, the jury must find an express or implied authority given by defendant to his children at the time of the purchase to pay plaintiff therefor, and that there must have been an express promise by defendant to plaintiff at the time of the purchase to make defendant responsible for payment for goods received by his children other than necessaries of life. Held, that the charge was erroneous, having omitted consideration of whether the articles furnished the children were necessaries, and not stating what would constitute an express or implied promise, and it was also calculated to impress the jury that explicit evidence of a promise was essential.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

4. PARENT AND CHILD (§ 3*) — SUPPORT OF MINOR CHILDREN—LIABILITY FOR NECESSARIES.

If articles furnished to minor children were reasonably necessary for their support and comfort, the father's promise to pay therefor would be inferred, in absence of a showing that he was ready to himself supply the children therewith.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

5. PARENT AND CHILD (§ 3*)—SUPPORT OF MINOR CHILDREN—PARENT'S LIABILITY.

To charge a parent with payment for articles, other than necessaries, furnished minor children, the children must have been expressly authorized by the father to purchase them, or he must have permitted their purchase with knowledge thereof, leading the seller to believe that they were purchased with his consent, or must have expressly agreed to pay for them; and this is true, whether the child had been emancipated or not, if the seller did not know thereof.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

6. PARENT AND CHILD (§ 3*)—PARENT'S LIABILITY.

If goods furnished a minor child were necessary, so that the law would imply the parent's promise to pay therefor, his knowledge that the seller expected him to pay would be immaterial, on his liability.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

7. PARENT AND CHILD (§ 3*)—PARENT'S LIABILITY—NECESSARIES FOR CHILDREN.

It was error not to charge, in an action against a parent for clothing furnished a minor child, that direct and positive evidence was not necessary to prove defendant's promise to pay for such necessaries.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. § 3.*]

8. CONTRACTS (§ 108*)—EMANCIPATION OF CHILD—PUBLIC POLICY.

An agreement by a parent to emancipate his minor children, so as to relieve himself of their support for necessaries, is invalid, as contrary to public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498–503, 505, 507, 509–510½; Dec. Dig. § 108.*]

Error from Crosby County Court; Pink L. Parish, Judge.

Action by R. M. Snell against C. D. Ham. Judgment for defendant, and plaintiff brings

error. Reversed, and remanded for new trial.

J. W. Burton, of Crosbyton, for plaintiff in error. R. A. Sowder and D. W. Puckett, both of Lubbock, for defendant in error.

HUFF, C. J. R. M. Snell, plaintiff in error, sued C. D. Ham, defendant in error, on an open account for $124.10, in the justice court, and obtained judgment therefor in said court, from which judgment defendant appealed to the county court of Crosby county, and upon trial in that court, January 26, 1911, judgment was rendered that the plaintiff take nothing and defendant recover his costs, from which judgment plaintiff brings the case to this court on petition and bond for writ of error.

The account is for wearing apparel furnished defendant's three boys, John, Orvin, and Julius, who at the opening of the account were 12, 13, and 15 years of age, respectively. The account was opened July 28, 1909, and closed August 13, 1910, and appears to be for wearing apparel, such as hats, caps, shoes, shirts, pants, gloves, rompers, and the like. At the time the first items were purchased and charged, defendant and his boys were present in the store, and the goods selected and delivered while all were present. At that time the defendant told plaintiff to keep the boys' account separate from his, as the boys were going down east to pick cotton, and he wanted to make the boys pay their own account. During the running of the account the defendant was frequently in the store when the boys got the goods, and at no time did he forbid or object to the plaintiff making sale of goods to the boys, or notify plaintiff he would not pay for them. Plaintiff did charge the items which the boys got on the daybook or blotter separately from those purchased by the defendant for himself, but in carrying the items to the ledger the individual purchases for himself personally and for the boys were charged to the account of the defendant. Before starting the account, the boys with their father had purchased goods, and the father sometimes paid for them, and sometimes the boys paid for them. Defendant testified at the trial in January, 1911, the boys had been away from home about two years. He could not control them and let them do whatever trading or anything else they wanted to. He said they would break him up if he tried to keep them, and that he never told Mr. Snell he would pay the boys' account if they did not, but supposed he looked to them for the money. Plaintiff testified that he looked to the defendant for the bill, and did not know that the boys were not at home living with their father. It is shown that Orvin worked for a Mr. Hendricks in the spring of 1910, and received the pay, and that his father never called on Mr. Hendricks for the money. Defendant's wife, the mother of the boys, was adjudged insane and sent to the asylum in the spring of 1909. The above is believed to be a sufficient statement of the case in order to understand the questions discussed.

[1] First. We overrule appellee's motion to dismiss the petition for writ of error, based on the ground that the judgment appealed from is not final, and failed to dispose of the issues. The fact that it was a nunc pro tunc judgment does not affect its finality. The county court had the power and authority to enter such judgment.

[2] Second. The appellant complains of the court's charge in the first, second, and third assignments of error. In some of the particulars pointed out by the assignments, we believe the charge complained of to be erroneous, and to have injuriously affected the rights of the plaintiff in error. "The English authority is strong to the point that a father can never be liable for necessaries furnished his children, unless he has expressly or impliedly authorized the child to purchase them, or expressly or impliedly contracted to pay for them. There is no legal obligation on a parent to maintain his child independent of the statutes, and therefore a third person, who may relieve the latter, even from absolute want, cannot sue the parent for reasonable remuneration, unless he expressly or impliedly contracted to pay. The mere moral obligation on a parent to maintain his child affords no legal inference of a promise to pay a debt contracted by him, even for necessaries. Some American authorities have gone almost, if not quite, as far as the English rule." Note to Bennett v. Gillette, 74 Am. Dec. 779. In the case of Moore v. Moore, 31 S. W. 533, it was there said, on page 534: "It is the common law that a father who supports his child has no claim for indemnity against the latter's estate. His legal duty to support them is well recognized in this state"—citing Bell v. Schwartz, 56 Tex. 357; Kendrick v. Wheeler, 85 Tex. 252, 20 S. W. 44; Fowlkes v. Baker, 29 Tex. 137, 94 Am. Dec. 270. As we understand the decisions of the court of our state, the English rule as above set out is not followed in this state. Fowlkes v. Baker, supra.

We quote from Porter v. Powell, 79 Iowa, 151, 44 N. W. 295, 7 L. R. A. 176, 18 Am. St. Rep. 353, an opinion by the Iowa Supreme Court, which we think announces the rule more in consonant with the rule as we understand it in this state. That court quotes from 5 Wait, Act. & Def. 50, the following: "The duty of parents to support, protect, and educate their offspring is founded upon the nature of the connection between them. It is not only a moral obligation, but it is one which is recognized and enforced by law. * * * In order to hold persons liable in any case for goods furnished, their actual authority for the purchases must be shown, or circumstances proven from which such authority may be implied. * * * The legal obligation of parents in respect to support extends only to those things which are

necessary, and if a parent refuses or neglects to provide such things for his child, and they are supplied by a stranger, the law will imply a promise on the part of the parent to pay for them." That court then says: "Without further citation of authorities, we announce as our conclusion that it is the legal as well as moral duty of the parent to furnish necessary support to their children during minority; that a parent cannot be charged for necessaries furnished by a stranger for his minor child, except upon an express or implied promise to pay for the same; and that such promise may be inferred on the ground of the legal duty imposed." Judge Willie, in Fowlkes v. Baker, 29 Tex. 137, 94 Am. Dec. 270, says: "Much conflict of authorities exists as to the ground upon which rests the legal liability of a father for necessaries furnished his infant child. Some insist that it grows out of the natural duty of the parent to provide sustenance and support for his offspring. Others say it is a question of agency and authority, and that a parent is only bound for such articles as are furnished with his consent, express or implied. The former doctrine is laid down by Chancellor Kent, and with him is the weight of American authority. * * * The question, therefore, as to whether articles purchased by the minor are necessary or not, became important only as it regulates the amount of evidence necessary to establish the father's liability. The authority of the parent to make the purchase must be proved in the one case, and in the other it is inferred, unless rebutted by circumstances showing that the parent had supplied the infant himself, or was ready to supply him." Parsons on Conts., vol. 1, p. 253.

[3] Assignments 1 and 2 object to paragraph 3 of the court's charge, which is as follows: "You are further charged herein that, before plaintiff can recover from the defendant, you must believe from the evidence that there was an express or implied authority given by the defendant to his children to purchase said goods, or that there was an express or implied promise at the time of the purchase of the goods on the part of the defendant to pay said plaintiff for said goods or be responsible for the payment of the same. You are further charged that there must have been an express promise on the part of the defendant to the plaintiff, at the time of the purchase of same, to be responsible for the payment of the same, before the plaintiff can recover from defendant for anything bought or received by his children from plaintiff, other than necessaries of life." We believe this charge, as given, was such error as should reverse the case. The charge quoted leaves out of consideration whether the articles were necessities or not. The jury are not told in the charge, as applied to the facts of the case, what would constitute an express or implied

authority or promise. Upon what facts could the jury imply a promise or authority? As drawn, it was calculated to impress the jury that explicit evidence as to authority or a promise must be introduced.

[4] We think the jury should have been told the law does not require that the father give express authority or that he make an express promise to pay for necessaries furnished his children, but that it was the legal duty of the father to furnish his children with the necessaries, and if the articles sold to the children were reasonably necessary to their support and comfort, then that such promise would be inferred, and their verdict should be for the plaintiff, unless rebutted by circumstances showing the father himself supplied the children, or was ready to do so.

[5] If the articles were not necessaries, or any portion of them were not, then as to such as were not necessaries the plaintiff must show that the children were expressly authorized by the father to purchase such articles, or that he expressly agreed to pay for the same, or if the father knew that they were being purchased by the children, and he stood by and permitted them to purchase the goods, and his words, acts, or conduct induced the plaintiff to believe that they were being purchased by his consent and permission, for which he would be responsible, and if the father did not object to the same being so purchased, and did not notify the plaintiff that he would not be responsible therefor, for such articles so purchased, the father would be liable to the plaintiff; and this would be true, if as a matter of fact he had emancipated the children, and plaintiff did not know of such emancipation. The objections to the second paragraph of the charge of the court, set out in the plaintiff's third assignment, are sustained, for the reasons set out in the assignment and propositions thereunder.

[6] We think the phrase in the charge: "And the defendant knew that the plaintiff expected defendant to be responsible"—is erroneous. If the facts under the law imply a promise, his knowledge of what plaintiff expected was immaterial.

[7] The fourth requested special instruction, refused by the court, of which complaint is made in the fifth assignment, while perhaps not correct in every particular, is sufficient to call the court's attention to the omission in the main charge, and the court was in error in not charging that direct and positive evidence was not required to prove authority or a promise on the part of the defendant to pay for necessities. Under the most restrictive rule as to the father's liability, held in England and in this country, by some courts, for necessaries, it has universally been held that it may be shown by circumstances. "The authority of the infant to bind the father by contract for necessaries is inferred both in England and this country from very slight evidence." Parsons on Con-

tracts, vol. 1, page 301; Hunt v. Thompson, 3 Scam. (Ill.) 179, 36 Am. Dec. 538; McMillen v. Lee, 78 Ill. 443.

[8] It has been suggested by the appellee that the defendant emancipated the three boys. We do not think the evidence sufficient to raise that issue. It, in our opinion, more nearly evidences abandonment. The mother of these boys was in the asylum. The assertion of the father that he saw they would break him up, and he permitted them to go, in the absence of some fact showing extravagance or incorrigibleness on the part of the boys, we do not think sufficient to show emancipation, especially when it is shown they were with their father frequently in the purchase of the goods. The eldest was only 15 years of age. We would hesitate, under the strongest evidence, to hold that the father, by agreement with children of their age, could relieve himself from his legal liability to support, care for, and maintain them. If he can agree for them to leave his home and go from under his control, free to go at will, then they would fall under the term of "delinquent and neglected children," as defined by article 2184, Revised Statutes 1911 (Acts of the Legislature 1907, p. 135, § 1): "For the purpose of this chapter the words 'dependent child' or 'neglected child' shall mean any child, under sixteen years of age, who is dependent upon the public for support, or who is destitute, homeless or abandoned, or who has not proper parental care or guardianship." Children the age of these three boys should be taken charge of by the authorities at the public cost, if turned out or permitted to leave home without money and without care from a parent or guardian.

Will the policy of the law permit a father to make an agreement with his infant children which will result in turning them out homeless on their own responsibility? Can he thus evade or shift his responsibility? While it is not necessary to a decision of this case, we believe an agreement by the father to so abandon his minor children is against the policy of the law, and that he cannot evade his legal or moral responsibility to care for his children by any such arrangements.

For the errors above pointed out, this case is reversed, and the cause remanded for a new trial; and it is so ordered.