## Mauck v. Southern Railway Co. in Kentucky.

(Decided May 1, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

Parent and Child—Hazardous Employment of Minor—Injury to Minor —Knowledge of Parent—Loss of Services—Action by Parent.— Knowledge of the father, who lives within a few miles of the railroad, that his son is working for the railroad, and failure on his part to object to such employment for a period of eight weeks, will constitute consent; and he cannot recover for the loss of services of his son in an action based solely on the fact that his son was injured while engaged in a dangerous employment without his consent.

S. M. SAPINSKY, J. R. DUFFIN for appellant.

EDWARD P. HUMPHREY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Owen Mauck, an infant seventeen years of age, was struck by a hand car and injured while employed by the Southern Railway Co. in Kentucky. His father, Solomon Mauck, brought this action against the company to recover damages for loss of his son's services. He bases his action on the fact that the company, without his consent, hired his son, an infant, and put him to work at a dangerous employment, and that he was injured while so employed. The company not only denied the allegations of the petition, but pleaded that the son had been emancipated. At the conclusion of plaintiff's evidence, the court directed a verdict in favor of the defendant. To review the propriety of this ruling, this appeal is prosecuted.

The evidence shows that appellant is a magistrate, residing at Doolittle Mills, Perry County, Indiana, but a short distance from Louisville, and near the line of the Railway Company. According to his evidence, Al Bovinett came to him on June 16, 1910, for the purpose of getting Owen to work on the Southern Railroad at Louisville. He told Bovinett that Owen could not go. After some insistence on the part of Bovinett, he told Bovinett he would let him know Saturday. He says that he went away from home on Saturday, but left

word with his wife to tell Bovinett that his son could not go. That was on June 18, 1910. After that he did not see Owen any more until he was sent home on crutches. He heard Owen was in Louisville, but had no means to go up there, or he would have come and seen about it. On cross-examination, he admits that when he returned home they told him that Bovinett had taken Owen off, and he supposed that they had gone off to work on a section. Owen afterwards returned home and had some washing done. Appellant, however, was absent at the time. Owen came for the purpose of getting others to work for the railroad. Appellant, when he came home, was informed of this fact. It was partly his understanding that his son had gone to Louisville to work for the railroad, and he supposed that he did not work for nothing. He tried to get word to his son, but could not find anybody who could tell him about him, although the railroad passed within about six miles of his house. Appellant admitted that his son had worked for the Southern Railroad in East St. Louis, and he knew of this fact. When at home, he gave his son his board. His son went away and worked for wages, and after paying his expenses, would send the balance home.

Mrs. Mauck testified that her husband left word with her to tell Bovinett that Owen could not go with him. This message was communicated to Bovinett. Notwithstanding the message, they both left. Appellant was absent at the time. She knew where the boy went. She knew that he was in Louisville working on a railroad section. Did not think her husband knew it all the time. Her husband knew where Owen was in a general way. After he went off with Bovinett, he knew Owen went to work on a railroad. Nothing was done about getting him back. Owen had worked away from home several times before, and after taking what he needed for clothes and board, he would bring his wages home. When Owen returned home the first time after going to Louisville, he told her where he was working. Owen staid at home a couple of days, but his father was absent. When his father returned he heard about it, and said he wished he had been there. When Owen returned on crutches, he brought his money with him, and gave every cent to the family, and it was used by them for their benefit. She guessed that appellant knew this fact. Owen Mauck, who was injured, testifies that Al Bovinett came down on the 16th of June, to get him to go to

work for the Southern Railroad. Bovinett asked his father if he could go, and his father told him he could not. On the 18th his mother told him that his father, who was absent, had left word for him not to go. Bovinett kept on begging, so he decided to go. Al Bovinett and his brother, Charlie, both of whom were working for the railroad, had lived in the vicinity of witness all their lives. After stating on cross-examination that his people did not know that he was in Louisville, he admits that his mother knew that he was going to work for the railroad. While he claims that his father did not know that he was working in Louisville, he admits that his father knew that he was working for the Southern Railway in the neighborhood of Louisville.

For appellant, it is contended that there is not the slightest proof tending to show consent on the part of appellant to his son's employment. While appellant does testify that he did not give his consent, and that he had no knowledge of the fact that his son was working for the railroad company, all the circumstances in the case show the contrary. He knew that Bovinett had come to get his son to work for the railroad. He knew that his son had left with Bovinett for the purpose of working for the railroad. He knew, when his son returned home to have his clothes washed, and that he left home to return to his work. His wife says that he knew this fact, his son says that he knew this fact; and while he himself claims not to have known it, he admits that it was partly his understanding. It was about eight weeks from the time when his son first left home to go to work for the railroad until he was injured. During this time, although the railroad ran within a short distance from his house, and he was only a few miles distant from the city of Louisville, he never once made any protest or objection to his son's continuing in the service of the railroad. Although claiming that his son was working without his consent, and that he did not authorize the original employment, his knowledge that his son was so employed, and his failure at any time thereafter to indicate, by word or act, that he objected to the employment, are sufficient to constitute consent. Furthermore, it is shown that Owen had frequently worked away from home, and after using enough money to support himself, brought the remainder of his wages to his family. In this case he did the same thing, and the money was used by the family. We do not see, under the facts of this

case, how it can be distinguished from the case of L. &
N. R. R. Co. v. Davis, 32 R.; 306. There the father knew
that his son was away working for the railroad company,
and he made no protest or objection. It is true that the
son was working only two miles and a half away, and
that the railroad was nearer to the father's home. That
fact can not alter the rule where the railroad is within
a reasonable distance, and a protest or objection could
be easily made. After referring to the fact that the
father lived within two miles and a half of where his
son was working for the railroad, and had made no pro-
test or objection to his remaining at work, the court, in
L. & N. R. R. Co. v. Davis, supra, said:

"We think this was a consent on the part of the
father to the employment of his son by the appellant.
He had no right, if he objected to the employment, to
remain silent about it until his son was hurt, and then
complain that the employment was without his consent.
He allowed the boy to draw his own wages, and it does
not alter the case that the money was delivered to the
father. If the father allowed the boy to keep the money,
this was a practical manumission of him, and if he re-
quired him to bring it home, this was a ratification of
the employment. The defendant was clearly entitled to
a peremptory instruction to the jury to find for it at the
close of plaintiff's evidence, but as this was not asked
for it can not be heard to complain that the court did
not give it.

"* * * We have already shown that the plaintiff,
by his own testimony, established that he acquiesced in
his son's continuing in the employment of the corpora-
tion after he knew of it, and this is all that was required
to relieve it of liability in a case like this for employing
an infant in a hazardous business."

For the same reason, we conclude that appellant is
not entitled to recover in this action, and that the per-
emptory instruction was properly given.

Judgment affirmed.