## Chesapeake & Ohio Railway Company v. DeAtley.

(Decided December 10, 1912.)

### Appeal from Mason Circuit Court.

1. Parent and Child—Right of Father to Recover for Loss of Services and Expenses for Injury.—Where a minor child, who has not been emancipated, receives injuries while in the employment of a stranger the father who has not consented to the employment is entitled to recover not only for the loss of the service of his son while unable to work on account of injuries received, but also the money necessarily expended in giving to his son medical care and attention.

2. Parent and Child—Effect of Emancipation.—When the father loses by manumission the right to control the services of his son, who is old enough to work for himself, he also loses the right to recover from the person in whose service the son was engaged the amount expended in care and attention to his son, made necessary by injuries received while so employed, as the right to recover for this expense depends on the right to recover for loss of services.

3.  Parent and Child—Implied Emancipation—Acts That Amount to,
    —A father who voluntarily permits his grown son to work for
    himself, and who knows where his son is employed and can
    ascertain the character of his employment, and who permits him
    to remain away from home more than a year without making
    any effort to control his conduct or employment, and the son
    receives and spends his own wages, this course of conduct
    amounts to an implied emancipation of the son.

4.  Parent and Child—When Stranger Employing Child Liable to
    Father.—A stranger who exercises reasonable care to ascertain
    the age of a person making application for employment, and
    whose appearance indicates that he is over twenty-one years of
    age, cannot be made liable in an action by the father, either for
    the services of his son, or for care and attention given to him
    while suffering from injuries received in the course of the em-
    ployment, although the son in fact may have been under twenty-
    one years of age when he was employed.

WORTHINGTON, COCHRAN & BROWNING for appellant.

A. D. COLE, HOLMES & ROSS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

John DeAtley, a minor, was injured while working
for the appellant, and this action was brought by the
appellee, his father, to recover from the appellant dam-
ages for the loss of the services of his son during the
time he was unable to work on account of the injuries,
and reimbursement for amounts he had paid out in fur-
nishing medical service and attention to him during the
time he was suffering from the injuries. He averred
that his son was employed by appellant, without his
knowledge or consent, and received injuries while en-
gaged for it in the performance of dangerous work.

For answer the appellant, after traversing the aver-
ments of the petition, affirmatively pleaded that when it
employed John DeAtley it believed he was of age and
had no knowledge or information that he was under
twenty-one years of age, and could not have obtained
such information by the exercise of ordinary care. It
further pleaded that the appellee knew that his son was
working for it as an employe in its train service, and
that he permitted him to continue in the service without
objection. It further averred that appellee had emanci-
pated his son and voluntarily relinquished all right to
control his employment or to have the benefit of his

services, and this being so, had no cause of action upon the grounds stated.

Upon a trial before a jury a verdict was returned in favor of appellee for $500; and a reversal of the judgment on this verdict is asked upon the single ground that the trial court should have directed a verdict in its favor.

If appellee had not emancipated his son and he was employed by appellant without the consent of appellee and with notice of his minority and received injuries while in this employment, then appellee was entitled to recover not only for the loss of the service of his son while unable to work on account of injuries received, but also the money necessarily expended by him in giving to his son medical care and attention. McGarr v. National & Providence Worsted Mills, 24 R. I., 447, 96 Am. St. Rep., 749; Dennis v. Clark, 2 Cushing (Mass.), 347, 48 Am. Dec., 671; Meers v. McDowell, 110 Ky.; 926; Illinois Central Ry. Co. v. Henon, 24 Ky. L. Rep., 298; L. & N. R. R. Co. v. Willis, 83 Ky., 57. But if appellee had emancipated his son or if appellant employed him without notice of his minority he was not entitled to compensation for loss of his services, or to be reimbursed for amounts expended by him in care and attention to his son during the time he was suffering from the injuries received.

When the father loses by manumission the right to control the services of his son, who is old enough to work for himself and make his own living, he also loses the right to recover from the person in whose service his son was engaged the amount expended by him in care and attention to his son, made necessary by injuries received while so employed, as the right to recover for this expense depends on the right to recover for loss of service. In such a state of case the right of action to recover for lost time and medical expenses is in the son, not the father. Rounds Bros. v. McDaniel, 133 Ky., 669.

This being the law applicable to the case on this point as we understand it, we will now look into the evidence, for the purpose of determining whether or not the appellee had emancipated his son before he accepted employment with appellant.

The evidence shows that the son, John DeAtley, was born in September, 1891, and lived with the appellee, his father, until December, 1909, when he left home and went to a relative of his father's in Bourbon

County, Ky., to assist him in stripping tobacco. He remained in Bourbon County for about ten days and went from there to Covington, Ky., at which place another relative of his father lived. While he was in Bourbon County his father testifies that he went to see him twice, but did not succeed in finding him, and that he supposed he went away from home because he wanted to work for himself.

He further testifies that after he went to Covington his mother received a letter or two from him, which she answered, but that he did not know his address in Covington, although he heard he was living there and was working at a wholesale whiskey house, and that he took no steps to find out where he was, as he expected he would get homesick and come back. He also said he did not write to his brother-in-law who lived in Covington, although he suspected that his son was making his home with him or that he knew where his son was, and that he did not send his son any money, nor did his son send him any.

He was asked these questions: "Q. From the time your son left your home in Bourbon County, in the fall of 1909, until he was injured in January, 1911, you acquiesced in his remaining away from home and at work, and permitted him to do this without requiring any portion of his wages to be sent you? A. I never gave him any authority to work for anybody. Q. But you permitted him to work away from home for other people without requiring his wages to be sent to you? A. No, sir; he never worked away from home. Q. Did you think he was living without expense. A. I allowed the boy was trying to earn his wages. Q. You knew he had to have money to live on away from home, didn't you? A. I suppose a man could not live without doing something. Q. You knew that six or eight months prior to the time of his injury you had heard he was at work? A. I heard it rumored about the house. Q. And that he was working in a whiskey house in Covington? A. I heard it. Q. You never went to Covington to ascertain his whereabouts? A. I never went for the reason I had bought a little place and didn't have the money to spend running around hunting the boy. Q. Did you know the name of the whiskey house? A. No, sir. Q. Did you ever try to find out? A. No, sir. Q. Did you write to your son in Covington or to your brother-in-law in Covington, to ascertain where he was or for whom he

was working? A. No, sir; I did not. Q. Did you undertake to ascertain just exactly where he was and just exactly what he was doing, in order that you might write him to get a portion of his wages to assist you? A. I did not. Q. Guy Bell told you he was in Covington and was not coming home Christmas? A. He did not think he was. He was thinking of going on the railroad. Q. When you heard that he was going on the railroad why didn't you go and see him? A. I just said it looked like times were pretty hard, and as I was in debt and didn't have the money to spend. Q. But you had notice that your son intended to go to work on the railroad? A. I heard he was thinking of going on the railroad, and I said to Guy, 'You tell him it is against my will to go to work on any railroad and to come home.' "

John DeAtley, the son, says that when he left home he went to his uncle's in Bourbon County and remained there about two weeks and went from there to his uncle's in Covington, and, after being there three or four weeks, got employment as a laborer with the appellant company and worked for it about three months, and then got employment in a whiskey house in Covington, and worked there about six months, when he again went back to work for the railroad company as a brakeman, and continued in this employment until he was injured in January, 1911.

He further testifies that when he first obtained employment from the appellant company he was sent to a clerk to make out a written application, and when he told the clerk that he was born in 1891 the clerk told him that his minority would prevent him from getting employment, and suggested to him that he say in his application that he was born in 1889, and this he did. He also testified that when he was employed the second time, as a brakeman, by another and different department he filled out his own application, giving the date of his birth as 1889, doing this because he had been told by the clerk to give this date if he ever afterwards applied for employment. He says that when he was employed the second time that he was not asked his age and did not tell it, although he himself made out the written application in which his age was given as over twenty-one.

When the son left home he was between eighteen and nineteen years of age, and when he was employed the

second time by the appellant company, in December, 1910, he was between nineteen and twenty years of age, and the evidence shows that his appearance indicated that he was over twenty-one years of age.

We think the evidence shows very plainly that the father consented that his son might work for himself, and that he surrendered his right to the control and service of his son. The boy was old enough and large enough to make his own living, and although he worked for more than a year within a hundred miles of his father, who all this time knew where he was, he made no effort to reclaim his services, nor did he do anything indicating that he desired to exert any further paternal control over him.

This course of conduct on the part of the father amounted to an implied, if not an express, emancipation of his son. A father who voluntarily permits his grown son to work for himself in a neighboring county, and who knows where his son is employed, or at least knows that he is employed, can easily ascertain the character of his employment, and who permits him to remain away from home more than a year without making any effort to control his conduct or his employment, and the son receives and spends his own wages, in short, acts in all respects as if he had reached his majority the father cannot, when the son receives some injury, assert claim of parental authority and recover from the employer of the son compensation. L. & N. R. R. Co. v. Davis, 32 Ky. L. Rep., 306; Mauck v. Southern Ry. Co., 148 Ky., 122; Round Bros. v. McDaniel, 133 Ky., 669.

There is another reason why the appellee should not recover in this case. When the son was employed in December, 1910, as a brakeman, in which employment he received the injuries that are the basis of the recovery sought in this action, his appearance indicated that he was twenty-one years of age, and a written application, made out by himself, gave his age as over twenty-one. Under this state of facts the appellant is not liable to the father upon the ground that it employed his minor son. In actions like this the father is not entitled to recover unless the employer of his son knows, or in the exercise of reasonable prudence and care could know, that the son was an infant. A stranger who exercises reasonable care to ascertain the age of a person making application for employment,

and whose appearance indicates that he is over twenty-one years of age, cannot be made liable in an action by the father, either for the services of his son or for care and attention given to him while suffering from injuries received in the course of the employment, although the son may in fact have been under twenty-one years of age when he was employed. Gulf, Colorado & Santa Fe R. Co. v. Redeker, 67 Texas, 190, 60 Am. Rep., 20; Illinois Central R. R. Co. v. Henon, 24 Ky. Law Rep., 298; Hendrickson v. Louisville & Nashville R. R. Co., 137 Ky., 562, 30 L. R. A., 311.

The attempt, however, is made to overcome this principle by the testimony of the son that when he was first employed the clerk who took his application advised him to give 1889 as the date of his birth, also telling him that if he was afterwards employed and required to state his age to give 1889 as the date of his birth although the clerk knew that he was born in 1891.

Assuming, that in giving the date of his birth incorrectly in the written statement made by him when he was first employed by the appellant company in January, 1910, he was induced to do so by the advice of the clerk, this did not excuse him from the consequences of giving an incorrect date when he was employed the second time, nor did the advice of the clerk charge the company with notice that when he was employed the second time he was in fact a minor. His employment the second time was in an entirely different department of the road from the one in which he worked under his first employment, and there is no suggestion in the record that any person connected with the railroad company at the time of the second employment had any knowledge or information of the misstatement made in his first application, or of the advice given to him by the clerk who took it.

The motion for a peremptory instruction should have been sustained. The judgment is reversed, with directions for a new trial in conformity with this opinion.