Porter v. Powell.

5. EMBEZZLE-
   MENT : evi-
   dence.

These views lead to a disposition of all questions in the case.  The judgment of the district court is

AFFIRMED.

PORTER v. POWELL.

1.  **Domestic Relations**: DUTY OF PARENT TO SUPPORT CHILD: IMPLIED PROMISE TO THIRD PARTY.  It is the legal as well as moral duty of parents to support their children during minority; and, though a parent cannot be charged for necessaries furnished by a stranger for his minor child, except upon an express or implied promise to pay for the same, such promise may be inferred on the grounds of the legal duty imposed.  (See opinion for citations *pro* and *con*.)

2.  ———— : LIABILITY OF PARENT FOR MEDICAL TREATMENT OF EMANCI- PATED CHILD.  Defendant's daughter, at the age of fourteen, went to reside away from her father's house, at a place thirty miles distant, where for three years she contracted for, earned and con- trolled her own wages, and provided herself with clothing; defend- ant consenting thereto, and not furnishing, nor agreeing to furnish, her with any money or means of support.  While thus absent she was dangerously attacked with typhoid fever, and at

her request was attended by the plaintiff, as her physician, for a period of twenty-one consecutive days, which services were rendered without the procurement, knowledge or consent of defendant. *Held* that there was a partial emancipation only, and not such a total emancipation as exempted the defendant from actual necessaries furnished to his daughter; that the services were necessary under the circumstances, and that judgment was rightly rendered against defendant therefor. (*Everett v. Sherfey,* 1 Iowa, 358, *distinguished.*) [BECK, J., *dissenting.*]

*Appeal from Dallas District Court.*—HON. O. B. AYRES, Judge.

FILED, JANUARY 29, 1890.

THE district court certifies to this court the following question, upon which it is desirable to have the opinion of the supreme court: "Is a father legally liable to a physician for the latter's services in professionally treating the minor daughter of said father, dangerously attacked with typhoid fever, who, at the date of said treatment, was seventeen years of age, and was then, and had been, residing away from her father's house for three years prior to the rendition of said services, earning and controlling her own wages, and providing herself with clothing, at a place thirty miles distant from her father's place of residence, the father not furnishing, or agreeing with his daughter to furnish, her with any money, or means of support, but consenting to her absence from home; the said professional services being rendered at the request of the said minor daughter, but were rendered and furnished without the procurement, knowledge or consent of the defendant, and without knowledge of the sickness, until demand was made for payment of said services by plaintiff, the attendance of plaintiff being from day to day, for a period of twenty-one days?" Judgment for plaintiff. Defendant appeals.

*W. W. Cardell* and *R. S. Barr,* for appellant.

*Parsons & Perry* and *D. W. Wooden,* for appellee.

GIVEN, J.—I. Appellant's contention is that the obligation of parents to support their minor children is only a moral one, and is not enforceable in the absence of statute or promise; that such promise is not to be implied from mere moral obligation, nor from the statute providing for the reimbursement of the public; and that an omission of duty, from which a jury may find a promise by implication of law, must be a legal duty, capable of enforcement by process of law. At first glance, this view of the law seems opposed to our natural sense of justice; yet it is not without support in the authorities. Such is held to be the law in New Hampshire and Vermont. See *Kelley v. Davis,* 49 N. H. 187; *Farmington v. Jones,* 36 N. H. 271; *Gordon v. Potter,* 17 Vt. 348. A different doctrine has long since been held in this state. In *Dawson v. Dawson,* 12 Iowa, 513, this court held that "the duty of the parent to maintain his offspring until they attain the age of maturity is a perfect common-law duty." In *Johnson v. Barnes,* 69 Iowa, 641, which was an action by the mother, who had been divorced, against the father, for support furnished their children, the court says: "As there was no promise, the question to be determined is whether one can be inferred in favor of a wife, who supports her child, as against her husband, who has without cause abandoned her and his child. The obligation of parents to support their children at common law is somewhat uncertain, ill defined and doubtful. Indeed, it has been said that there is no such obligation. * * * But we are not prepared to say that this rule has been adopted in this country, and it should be conceded, we think, that, independent of any statute, parents are bound to contribute to the support of their minor children, and that such obligation rests mainly on the father, in the absence of a statute, if of sufficient ability; and that, in favor of a third person who supports a child, a promise to pay may and should be inferred on the ground of the legal duty imposed." In

*(margin note: 1. DOMESTIC relations: duty of parent to support child: implied promise to third party.)*

*Van Valkinburgh v. Watson*, 13 Johns. 480, it is said: " A parent is under a natural obligation to furnish necessaries for his infant children; and, if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent." In 5 Wait. Act. & Def. 50, the author says: " The duty of parents to support, protect and educate their offspring is founded upon the nature of the connection between them. It is not only a moral obligation, but it is one which is recognized and enforced by law. * * * In order to hold the person liable in any case for goods furnished, either actual authority for the purchase must be shown, or circumstances from which such authority may be implied. * * * The legal obligation of parents in respect to support extends only to those things which are necessary; and if a parent refuses or neglects to provide such things for his child, and they are supplied by a stranger, the law will imply a promise on the part of the parent to pay for them." Without further citation of authorities, we announce as our conclusions that it is the legal as well as moral duty of parents to furnish necessary support to their children during minority; that a parent cannot be charged for necessaries furnished by a stranger for his minor child, except upon an express or implied promise to pay for the same; and that such promise may be inferred on the grounds of the legal duty imposed.

II. It is further contended on behalf of appellant that the facts certified show an emancipation of his daughter, such as to relieve him from liability for the services sued for; that support and services are reciprocal duties, and if one is withheld the other may be withdrawn. Parents are entitled to the care, custody, control and services of their children during minority. To emancipate is to relase; to set free. It need not be evidenced by any formal or required act. It may be

2. ——: liability of parent for medical treatment of emancipated child.

proven by direct proof or by circumstances. To free a child, for all the period of minority, from care, custody, control and service would be a general emancipation; but to free him from only a part of the period of minority, or from only a part of the parent's rights, would be limited. The parent, having the several rights of care, custody, control and service during minority, may surely release from either without waiving his right to the other, or from a part of the time without waiving as to the whole. A father frees his son from service. That does not waive the right to care, custody and control, so far as the same can be exercised consistently with the right waived. He frees his son of eighteen from services for one year. That does not waive the right to his services after the year; and if the waiver has been for an indefinite period, the parent may assert his right to the services of the child at any time within the period of minority, subject to the rights of those who have contracted with the child on the strength of the waiver as to services. In the law of contracts, where a father expressly or impliedly, by his conduct, waives his right generally to the services of a minor child, such child is said to be emancipated. The child may sue, under such circumstances, on such contracts as are made with him for his services. *Nightingale v. Withington*, 15 Mass. 272; *McCoy v. Huffman*, 8 Cow. 84; *Stiles v. Granville*, 6 Cush. 458; Schouler, Dom. Rel., sec. 267. There is nothing in these authorities, nor any reason, against the view expressed, that emancipation may be general or limited. There is no direct evidence as to the purpose of the defendant with respect to his daughter; but we are to say, from the circumstances shown, whether they evidence either a general or limited emancipation. The case of *Everett v. Sherfey*, 1 Iowa, 358, is relied upon. That was an action to recover damages of the defendant for having harbored and retained the plaintiff's minor son in his employ. The issues and circumstances were quite different from those certified in this case. The court says: "There could be no such harboring as

would render the defendant liable to the father in this action, if the son was in truth emancipated; and, if the son was not emancipated, it will still be a question whether there was such harboring as renders the defendant liable. By 'emancipation,' in this connection, we understand such act of the father as sets the son free from his subjection, and gives him the capacity of managing his own affairs as if he was of age." The following is given as a condensed statement of the facts : " In the spring or summer of 1852, plaintiff's son, a minor of the age of seventeen, went to reside at defendant's house, and was then and afterwards employed by him as a hired hand for over one year; the defendant paying the son full wages for his services. In February, 1853, plaintiff sued defendant to recover for the services, in which suit the judgment was for the defendant. The son was of a dissatisfied and roving disposition, careless and improvident in his habits, not under parental control, and, either through wilfulness or negligence, had not received the education proper for a person of his age and condition. In December, 1851, a misunderstanding arose between the parent and the child, which resulted in the son's leaving home, and residing and working at various places, before he went into the defendant's service. After said December, 1851, the father did not, apparently, have or exercise the proper and necessary control and authority over the said minor that a parent of a well-regulated family ought and should exercise, and permitted and sanctioned the hiring out of said minor at various places, and at different employments, away from home; but who made the contracts, or received the pay, is not stated nor proven. The father had also stated that he had no control over his son, and had in some instances waived his authority over him. It also appears that on the eleventh of September, 1852, the plaintiff, by publication in a newspaper, forewarned all persons from crediting his said son on his account, avowing, also, therein that he would pay no debts of his contracting, and that he would not

Porter v. Powell.

fulfill any contracts, or pay debts, entered into by him."
The court says : "From these circumstances, to mention
none others, we think the court might fairly conclude
there was a manumission or emancipation up to the
time above stated, and that there was no liability for
giving the son shelter, residence and a home. At least,
we think it so fairly deducible from the facts that we
should not disturb the conclusion."

The circumstances disclosed in this case are these :
The defendant's daughter, at the age of fourteen, went
to reside away from her father's house, at a place thirty
miles distant, where for three years she contracted for,
earned and controlled her own wages, and provided
herself with clothing, her father consenting thereto ; he
not furnishing, or agreeing to furnish, her with any
money or means of support. That, while thus absent,
she was dangerously attacked with typhoid fever, and
at her request was attended by the plaintiff, as her
physician, from day to day, for a period of twenty-one
days, which services were rendered without the procure-
ment, knowledge or consent of the defendant. These
circumstances are widely different from those in
*Everett v. Sherfey.* Here there was no disagreement
that resulted in the daughter leaving home ; no want or
waiver of parental authority ; no dissatisfied and roving
disposition ; no statement by the father that he had no
control over his daughter ; and no publication by the
father notifying persons not to credit her on his
account. The circumstances disclosed in this case are
such as are of frequent occurrence in this country.
Parents, either from necessity or from a desire to teach
their children to be industrious and self-supporting,
emancipate them from service, for a definite or indef-
inite time, without any intention of thereby releasing
their right to exercise care, custody and control over
the child. The obligation of parents to support their
minor children does not arise alone out of the duty of
the child to serve. If so, those who are unable to
render service because of infancy, sickness or accident
—who, most of all others, need support—would not be

entitled to it.    Blackstone, in his Commentaries (volume
1, page 446), says:    "The duty of parents to provide
for the maintenance of their children is a principle of
natural law,—an obligation, says Puffendorf, laid on
them, not only by Nature herself, but by their own
proper act in bringing them into the world ; for they
would be in the highest manner injurious to their issue
if they only gave their children life that they might
afterwards see them perish.    By begetting them, there-
fore, they have entered into a voluntary obligation to
endeavor, as far as in them lies, that the life which they
have bestowed shall be supported and preserved.    And
thus the children will have the perfect right of receiv-
ing maintenance from their parents."    This obligation
to support is not grounded on the duty of the child to
serve, but rather upon the inability of the child to care
for itself.    It is not only a duty to the child, but to the
public.    The duties extend only to the furnishing of
necessaries.    What are necessaries must be determined
by the facts in each case.    The law has fixed the age of
majority ; and it is until that age is attained that the
law presumes the child incapable of taking care of
itself, and has conferred upon the parent the right to
care, custody, control and services, with the duty to
support.

III.    There being no direct evidence as to the
purposes of the defendant with respect to his daughter,
we are to say with what intention he consented to his
daughter's going and remaining away from his home as
she did.    That he intended she should control her own
earnings, at least until such time as he should declare
otherwise, is evident ; but that it was ever his intention
that if, by sickness or accident, she should be rendered
unable to support herself, he would not be responsible
to those who might minister to her actual necessities,
we do not believe.    Such an inference from these facts
would be a discredit to any father.    In our view, there
was, at most, but a partial emancipation,—an emanci-
pation from service for an indefinite time.    The father
had a right at any time to require the daughter to

Porter v. Powell.

return to his home and service; and she had a right at any time to return to his service, and to claim his care, custody, control and support. There was no such an emancipation as exempted the father from liability for actual necessaries furnished to his daughter. In view of the legal as well as the moral duty of appellant to furnish necessary support to his daughter during minority, and especially when unable, from infancy, disease or accident, to earn her own necessary support, we think he may well be understood as promising payment to any third person for actual necessaries furnished to her. As already stated, what are necessaries must be determined from the facts of each case. What would be necessary support to a child in sickness would not be necessary in health. The services sued for were evidently necessary for the support and well-being of the defendant's daughter. As we have seen, he had not relieved himself from the duty to furnish her such support, and, from his obligation to do so, may be presumed to have promised payment to any one who did furnish it in his absence. Our conclusion is that the judgment of the district court should be

AFFIRMED.

BECK, J. (*dissenting*).—I. I cannot assent to the doctrines and conclusions announced in the majority opinion in this case. The facts are presented in the certificate of the judge upon which the case is brought here on appeal. We cannot look elsewhere for the facts. They are, briefly stated, these: The daughter was seventeen years old, and, with the father's consent, was at service thirty miles away from his home, and had been for three years, all the time controlling her own wages, and supplying her own wants, and receiving nothing for support or necessaries from her father. The father had no knowledge that services were rendered to the daughter by plaintiff, or that his daughter was sick. It is not shown that the daughter was a pauper, or without means to pay the plaintiff. No presumption to that effect will be entertained.

II.   These facts show that the daughter was emancipated by the father.   Emancipation may be shown by circumstances from which may be inferred the consent of the father that the child may control his own time, earnings and actions.   Slight circumstances tending to show such consent are sufficient, in the absence of contradictory evidence.   Schouler, Dom. Rel., sec. 267; *Everett v. Sherfey*, 1 Iowa, 358.

III.   Emancipation relieves the child of subjection to the parent, and bestows upon him the capacity of managing his own affairs as if he were of age (*Everett v. Sherfey, supra;* Schouler, Dom. Rel., sec. 268); and it also relieves the parent of all legal obligation to support the child ( Schouler, Dom. Rel., sec. 268 ).

IV.   A parent is bound neither at common law, nor by any statute of the state, to support his children who are of age.   *Monroe County v. Teller*, 51 Iowa, 670; *Blachley v. Laba*, 63 Iowa, 22.   As I have shown, an emancipated child stands as to his obligation to his parent and the parent's exemption from obligation for his support, just as a child who is of age.

V.   It may be that the parent would be under obligation to support a pauper child who is of full age, or that a promise would be inferred on the part of the father to render such support.   But that point is not in this case, as it is not shown or claimed that the child for whose support the father was sued is a pauper, or not possessed of ample means to pay plaintiff for the services rendered by him.

VI.   Doctrines as to the liability of the father for the support of his minor child, and his liability therefor upon a promise, express or implied, and upon other points of the law, are found in the majority opinion, from which I dissent.   As tending to support my views, I cite the following decisions of this court:  *Dawson v. Dawson*, 12 Iowa, 512; *Johnson v. Barnes*, 69 Iowa, 641.   See, to the same effect, Schouler, Dom. Rel., sec. 236.   In my opinion, the judgment of the district court ought to be                         REVERSED.