P. J. HUNYCUTT & CO. v. WILLIAM THOMPSON.

(Filed 17 April, 1912.)

1. Infants — Necessaries — Father's Wrongful Conduct—Emancipation of Son—Father's Liability.

A father is responsible for necessaries furnished his son when he has wrongfully driven him from home and forced him to earn his own living; for though the father's act may have emancipated his son to the extent of depriving him of his right to the earnings of the son, it does not extend to his responsibility for necessaries furnished the son arising from conditions brought about by his own wrong.

HUNYCUTT *v.* THOMPSON.

**2. Same—Funeral Expenses.**

>   The responsibility of a father for necessaries furnished his
>   son, whom he has driven from home and forced to make his
>   own living, extends to funeral expenses of the son, necessarily
>   incurred, which the father had not authorized.

APPEAL from *Daniels, J.,* at September Term, 1911, of
STANLY.

This action is to recover $40 alleged to be due plaintiff for
the burial expenses of the son of the defendant.

The son was a minor, and was living apart from the defend-
ant at the time of his death, and was in the enjoyment of his
own earnings, but the plaintiff offered evidence tending to
prove that the defendant wrongfully drove him from home.

It was in the evidence that the son owned personal property
of the value of $60 or $70, which was disposed of by his rela-
tions, and there was no evidence that the defendant expressly
authorized the expense incurred.

At the conclusion of the evidence the defendant moved for
judgment of nonsuit, which was denied, and the defendant ex-
cepted. Exceptions were also taken to the charge of his Honor,
but they are all involved in the motion for judgment of non-
suit.

The following verdict was returned by the jury:

1. Had the deceased, William Thompson, Jr., been emanci-
pated by his father, and was he still emancipated at the time
of his death? Answer: No.

2. In what amount, if any, is the defendant indebted to the
plaintiff? Answer: $35.

Judgment was entered on the verdict in favor of the plaintiff,
and the defendant appealed.

*A. C. Hunycutt for plaintiff.*

*I. R. Burleyson and R. L. Smith for defendant.*

ALLEN, J., after stating the case: It is conceded, on the one
hand, that the defendant would have been liable for the burial
expenses of his son, a minor, incurred without his express au-
thority, if the son had been living with the defendant at the
time of his death, and, on the other, that there is no liability

if the son left the home of the father voluntarily and without fault on the part of the father. The point in debate, therefore, is whether the defendant can avoid liability when he has wrongfully driven his child from home.

The position taken by the defendant's counsel is sound, that "If a father neglects and refuses to support or maintain his son during his minority, and denies him a home, so that he is forced to labor abroad and procure a living for himself, he is not entitled to the earnings of such son, as, under such circumstances, the law will imply that the father has emancipated his son from his service and conceded to him the right to enjoy the fruits of his own labor"; but it does not necessarily follow that the father is relieved from all responsibility because he has lost the right to control the earnings of his son.

The objection to such a conclusion is that it would permit the father to take advantage of his own wrongful act, and to relieve himself from responsibility by conduct which the law condemns, and in our opinion the charge of his Honor was a clear and accurate statement of the law. He said: "The mere fact that a child is living away from home, with the consent of the parent, does not relieve the parent from liability for necessaries furnished to the child, and the parent is liable where his misconduct or abuse has driven the child to leave him; but, ordinarily, where there is no fault upon the part of the parent, a child who voluntarily abandons the parent's home for the purpose of seeking its fortune in the world or to avoid parental discipline and restraint, forfeits the claim to support, and the parent is under no obligation to pay therefor. A boy may be emancipated for some purposes and may not be emancipated for others. There may be a total emancipation or a partial emancipation. If the plaintiff's contention is true in this case, the father ran the boy off and permitted him to go to work, and to earn wages and to collect his money. That would be emancipation for certain purposes. That would authorize the boy to make contracts, collect the money, and spend the money. The father couldn't then come and collect his money. That would be an emancipation for that purpose. But if the father was in fault, if he ran the boy off from home, then there could

be no emancipation which would relieve the father from the
duty of providing necessities for the son in the event he was
down sick and died. I charge you, that if the plaintiff has
satisfied you by the greater weight of the evidence that the
defendant drove his young son, William Thompson, away from
his home, you will answer the first issue 'No.' The first issue
is, 'Had the deceased, William Thompson, Jr., been emancipated
by his father, and was he still emancipated at the time of his
death?' So, then, if you find from this evidence, and by the
greater weight of it, that his father drove him away from home,
and he remained away, according to the evidence, twelve months
or sixteen months, or whatever you may find to be the time,
and was taken sick and died, your answer to the first issue will
be 'No,' because that didn't emancipate, didn't relieve the
father from his duty to look after and protect and care for his
son—because he was in fault, if you find that he ran him away
from home. But if you find that the boy left of his own voli-
tion, because he wanted to go, because he was tired of home and
wished to escape parental control and correction and seek his
fortune in life for himself, and was earning money and had on
hand at the time of his death this buggy, which sold for $37.50,
according to the testimony, and the watch, which sold for $5,
and this balance in the hands of Mr. Efird of $16.20, then you
would find, gentlemen, the answer to this first issue to be 'Yes.' "

The authorities are not uniform on this question, but they
fully sustain the charge. 2 Kent Com., 193; Tyler on Infancy,
114; 29 Cyc., 1609; *Owen v. White,* 30 Am. Dec., 573; *Weeks
v. Merrow,* 40 Me., 151; *Bennette v. Gillette,* 74 Am. Dec., note
on page 782.

In 2 Kent, *supra,* the author says: "If a father suffers the
children to remain abroad with their mother, or if he forces
them from home by severe usage, he is liable for their neces-
saries."

In Tyler on Infancy, *supra:* "If the parent turn away his
child from home, or so cruelly treat him that he cannot remain
under the parental roof, or abandon him without adequate pro-
vision, the rule is well settled that such parent may be made
to pay for necessaries furnished such infant child."

In Cyc., *supra:* "The mere fact that a child is living away from home with the consent of the parent does not relieve the latter from liability for necessaries furnished the child, and the parent is liable where his misconduct or abuse has driven the child to leave him."

In *Owen v. White, supra,* the Court says: "If a child leave his father's house to seek his fortune in the world, or to avoid domestic discipline and restraint, or escape from justice, the authority of the father to purchase necessaries is not implied. But if a father abandon his duty to his infant child, so that he is forced to leave home, he is liable for a suitable maintenance. And the principle of the distinction is that in one case the father is blameless and in the other blamable." And in *Weeks v. Merrow, supra:* "If a minor is forced out into the world by the cruelty or improper conduct of the parent, and is in want of necessaries, such necessaries may be supplied and the value thereof collected of the parent, on an implied contract."

It follows, therefore, as there was evidence that the defendant had driven his minor son from home, there was no error in denying the motion for judgment of nonsuit, and the charge being in accordance with law and justice, the judgment is affirmed.

No error.