Memphis Steel Const. Co. v. Lister.

MEMPHIS STEEL CONST. CO. *v.* ROY LISTER, BY NEXT
FRIEND, W. A. LISTER.
(two cases).

(*Knoxville.*   September Term, 1917.)

1.  **PARENT AND CHILD.**   Emancipation.   "Complete emancipation."

"Complete emancipation" loses to the parent custody and control, and works a severance of the legal filial relation as completely as if the child were of age. (*Post, p.* 310.)

2.  **PARENT AND CHILD.**   "Partial emancipation."

"Partial emancipation" frees a child for only a part of the period of minority, or from only a part of the parent's rights, or for some purposes, and not for others. (*Post, pp.* 310-311.)

Cases cited and approved: Wallace v. Cox., 136 Tenn., 69; Lufkin v. Harvey, 131 Minn., 238.

3.  **PARENT AND CHILD.**   Action for loss of services.   Burden of proof.

The burden of proof to establish a complete emancipation is upon defendant, in a suit by the parent for loss of services of the child through injury. (*Post, pp.* 311-312.)

Case cited and approved: Singer v. St. Louis, etc., R. Co., 119 Mo. App., 112.

4.  **PARENT AND CHILD.**   Loss of services.   Emancipation. "Complete emancipation.

A minor, who had not left the father's home, but remained as a member of the family, contributed to the family expenses through voluntary gifts to his mother, but did not pay for meals or lodging as a boarder, and had never been formally set free by his father, was not completely emancipated, so as to bar a suit by the father for loss of his services. (*Post, p.* 312.)

Memphis Steel Const. Co. v. Lister.

5. PARENT AND CHILD. Loss of services. Emancipation.
Where the emancipation of a minor is complete, the father's right
to maintain an action for loss of services due to injuries is
cut off; the act affecting the entire home-spent period of mi-
nority, and being irrevocable at the father's instance. (*Post, p.*
312.)

Cases cited and approved: McCarthy v. Boston, etc., R. Co., 148
Mass., 550; Chesapeake, etc., R. Co., v. DeAtley, 151 Ky., 109.

6. PARENT AND CHILD. Emancipation. Revocation.
The partial emancipation of an infant is revocable by the father.
(*Post, pp.* 312-313.)

7. PARENT AND CHILD. Loss of services. Emancipation.
A parent can recover for the loss of the child's services by wrong-
ful act of the child's employer, although such child has been
partially emancipated. (*Post, pp.* 312-313.)

Cases cited and approved: Hopkinson v. Knapp & S. Co., 92 Iowa,
328; Elwood Elec. St. Ry. Co. v. Ross, 26 Ind. App., 258; Texas,
etc., R. Co. v. Adkins (Tex. Civ. App.), 126 S. W., 954.

8. PARENT AND CHILD. Relations. Rights and duties.
The duties and obligations of parent and child are reciprocal; it
being the natural and legal duty of the parent to support the
child, and by way of return therefor he has also the right to its
services during minority. (*Post, pp.* 313-314.)

Case cited and approved: Tennessee Mfg. Co. v. James, 91 Tenn.,
154.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.—
VON. A. HUFFAKER, Judge.

CORNICK, FRANTZ, McCONNELL & SEYMOUR, for appellant.

GEO. S. CHILD and PICKLE, TURNER, KENNERLY & CATE, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit was brought by Lister to recover of the construction company for the loss of services of his minor son, who was injured by the tortious act of appellant, and a judgment of $200 was awarded. On appeal the judgment was reversed by the court of civil appeals, and the motion of the construction company for peremptory instructions in its favor was sustained.

This judgment was rendered because the appellate court was of opinion that the father, prior to the son's injuries, had so far emancipated the minor that he was not entitled to maintain an action for the loss of future services of the son. We are petitioned by Lister to review the judgment.

The son testified that he was employed by a quarry company and that out of his wages he gave his father and mother what they needed for household expenses, running from $3 to $6 per week, regularly; that he did this voluntarily. He resided with his parents, but did not pay board as a boarder. He had never asked his father's permission to work for others, and all the while drew his own wages from his employer; his fa-

ther allowed him to have them all, except what was turned over to the mother for household expenses.

The father in his own behalf stated:

"I had never formally set the boy free, said he was his own man, and turned him loose. I paid part of the family expenses as far as my money would go, and the family the rest. This boy lives in the family" and turned over to his mother a part of his wages to aid in the matter of household expenses.

It is not disputed that, when the minor son was injured, he was taken to and kept in the father's house; the father and the mother nursing him and caring for him generally.

We are of opinion that the court of civil appeals misconceived the rights of the father, and that there was no emancipation by the father that lost him the remedy he seeks.

That court failed to take the distinction between complete emancipation and partial emancipation, and the effect thereof on the right asserted in this action.

"Complete emancipation" loses to the parent custody and control; in fact, works a severance of the legal filial relation as completely as if the child were of age. Any act that operates to sunder such ties ought not lightly to be inferred from a given state of facts, where the father is blameless in conduct towards the child.

"Partial emancipation," which frees a child for only a part of the period of minority, or from only a part of the parent's rights, or for some purposes, and not

for others, is rather to be implied. *Wallace* v. *Cox*, 136 Tenn., 69, 188 S. W., 611, L. R. A., 1917B, 690; *Lufkin* v. *Harvey*, 131 Minn., 238, 154 N. W., 1097, L. R. A., 1916B, 1111.

The fact that the father allowed the son to enter the employment of the quarry company and to receive his wages should not, without more, determine that there was a complete emancipation. The father's was an humble station in life; and it often is the case that permission for such a son to go out to work and to receive his wages may be the best means to prevent his waywardness. A feeling of some measure of self-mastery on the son's part may be with him a staying influence, and so intended to be by the assenting father. It ought not necessarily to be the token of abnegation of paternal control, since it may be in essence the wisest sort of control over the youth's destiny. A father of affluence ought to be permitted to give his son a training for a period in employment or in handling affairs of business on his own account, in order to the self-reliance and the encouragement to habits of industry that may save the son from engulfing worthlessness and fit him to handle later his patrimony. In either case the law should be slow to put the parent to the hazard of losing all control over his own child, by imputing to him an intent (and it must be his intent that governs) to completely emancipate.

The burden of proof to establish a complete emancipation was upon the respondent company asserting and relying upon it. *Wallace* v. *Cox*, supra, *Singer*

v. *St. Louis, etc*, *R. Co.*, 119 Mo. App., 112, 95 S. W., 944.

We are of opinion that any emancipation effected in this case was only partial. The son had not left the father's home, but remained as a member of the family; he contributed to the family expenses through voluntary gifts to his mother, and not as a boarder contracting for meals and lodging. As to lodging, he apparently was supported by the father; and the latter states that he "had never formally set the son free, nor said that he was his own master, and turned him loose." May it be said that in such circumstances, had the boy lost his position and turned to work for his father, he could have maintained an action against the father for wages? That seems to be the result of complete emancipation according to the authorities. We are of opinion that there was no express emancipation, and that an implied complete emancipation is not shown.

It seems both logical and just to hold that if the emancipation is complete the father's right to maintain such an action as this is cut off; the act affecting the entire unspent period of minority and being one that is not revocable at the father's instance. The rule is so declared in *McCarthy* v. *Boston, etc., R. Co.*, 148 Mass., 550, 20 N. E., 182, 2 L. R. A., 608, and cases cited; *Chesapeake, etc., R. Co.*, v. *De Atley*, 151 Ky., 109, 151 S. W. 368.

But, when the emancipation is partial, it is revocable; and the parent's right to recover for services

lost by reason of the wrongful act of respondent is to our minds clear. Such seems to be the conclusion reached in the few cases that pass upon facts that are quite similar in some of which the facts were not so strong in the father's favor as they are in the pending suit. *Hopkinson* v. *Knapp & S. Co.*, 92 Iowa, 328, 60 N W., 653; *Elwood Elect. St. R. Co.* v. *Ross*, 26 Ind. App. 258, 58 N. E., 535; *Texas, etc., R. Co.* v. *Adkins* (Tex. Civ. App.), 126 S. W., 954.

The duties and obligations of parent and child are, in some measure, reciprocal. The natural and legal duty of the parent is to support the child; and by way of return the father has a right to the services of the child during minority.

That the father would be compelled in the circumstances of this case to pay a bill incurred for medical services performed for the son in his illness was settled by this court in *Wallace* v. *Cox*, supra, and we see no impediment to his successfully asserting a claim for loss of services due to the tortious injury of the minor. The burden imposed in the one case argues for recompense in the other.

What we have said does not run counter to most of the authorities cited on the brief of the respondent company. The father, having assented to the son's taking employment with the quarry company and to the receipt of his own wages, might not be entitled to recover for the services performed as against the son or the employer; but the father would have, notwithstanding, a right to terminate that employment, and command the

services of the son in another direction, and collect his wages from the new employer. Some of the cases that deal with this phase of law use the word "emancipate" broadly, and without taking occasion to make the distinction between complete emancipation and partial emancipation, or emancipation *ad hoc*. Perhaps a better word to express the thought intended to be conveyed in this connection by "partial emancipation" is "relinquishment," the use of which would tend to prevent confusion, which seems to have caused the ruling adverse to the father in this case. While the phrase "partial emancipation" has been recognized and used by this court (*Tennessee Mfg. Co.* v. *James,* 91 Tenn., 154, 18 S. W., 262, 15 L. R. A., 211, 30 Am. St. Rep., 865), and generally, it is not readily apparent how an emancipation may be, strictly speaking, partial; but, when used, it imports a relinquishment of the parent's rights in so far.

Entertaining these views we direct the entry of a judgment reversing the judgment of the court of civil appeals, and the affirmance of that of the circuit court; all costs to be taxed against the construction company.