Fɪᴇᴅʟᴇʀ *et al. v.* Pᴏᴛᴛᴇʀ *et al.*

(*Jackson,* April Term, 1943.)

Opinion filed July 3, 1943.

C. B. Tipton and C. S. Seay, both of Memphis, for complainants.

Robert M. Nelson and Graham Moore, both of Memphis, for defendants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to recover wages under the Federal Fair Labor Standards Act of 1938, 29 U. S. C. A., sec. 201 et seq., by employees of Smith Ice Cream Company alleged to have been doing an interstate business. The Smith Company was a partnership in which Frank Smith, Sr., owned two-thirds and defendant Chris Fiedler one-third. The business was operated exclusively by Smith, Fiedler being otherwise engaged, and without any actual knowledge of who were the employees, the hours of work, or the wages paid. The business had become financially embarrassed and on November 8, 1940, apparently for his protection, Fiedler bought out Frank Smith, Sr., and in a written contract assumed all outstanding obligations of the business, and took over active control. M. I. Garber signed this contract as a guarantor of the obligations therein assumed by Fiedler, and he was made a defendant, along with Fiedler, in this suit. The complainants were Frank G. Smith, Jr., a minor son of Frank G. Smith, Sr., who sued for $1,444.68, Roland James Potter, who sued for $772.91, and Charles L. Ricks, Jr., who sued for $871.61, claiming these sums as unpaid wages, due them as employees of Smith Ice Cream Company, and each sued for statutory damages in amounts equal to the unpaid wages claimed, and also for attorneys' fees. Meanwhile, Smith, Sr., had left the State. He was not sued. Following a reference to the Clerk and Master, the Chancellor decreed wages and damages to each of the complainants as follows: Smith $1,060.28 and $349.92 attorney fees; Ricks $646.52 and $213.37 attorney fees; and Potter $565.74 and $186.71

attorney fees; the aggregate recovery for wages and damages being $2,272.54 and attorneys fees of $750. The Court of Appeals affirmed. This Court granted *certiorari* and argument has been heard.

The petition in this Court challenges the decree on several grounds, relied on and overruled below, among them the following:

1. As to complainant Frank Smith, Jr., it is urged that he was a minor working for his father in this plant operated by his father, the bill, filed the 28th of January, 1941, charging that he was an "infant, nineteen years of age, and, therefore, files this bill by his mother and next friend, Lillie L. Smith;" and it is insisted, contrary to the holdings of the lower courts, that he had never been emanicipated; that the undisputed evidence shows that if in any sense or degree he had been emancipated, such emancipation was not more than partial or limited; that his action would not lie against his father, by whom he was employed and for whom he was working at the time his alleged services were rendered and, therefore, does not lie against defendants.

2. It is next insisted that the claims asserted were exorbitant and unjust, being approximately three times the amounts decreed by the Chancellor, and that these grossly excessive claims were made in bad faith, with knowledge of their falsity and under circumstances which were wholly inequitable and called for the application of the doctrine of unclean hands and the refusal of a court of equity to grant any recovery; it being charged and shown by the testimony of complainant Smith himself that the bringing of the suit was designedly delayed and the existence of the claims concealed, until his father had sold out his interest in the business and procured the

execution of the agreement with Fiedler and guarantee thereof by Garber.

3. It is also insisted that on the facts shown the case is not one for the allowance of damages, provided for by the statute, since it appears that the defendants were not the parties responsible for the operation of the business at the time of the alleged violations of the Fair Standards Act, but are successors only, without notice or knowledge of the facts relied on; that having brought their suit in a Court of Equity, they have elected to be governed by the equitable principles which control and that this drastic penalty will not be enforced.

4. And, also, it is urged that in no event should more than nominal attorney fees be allowed the complainants, in view of the excessive and unreasonable demands asserted in the suit and in consideration of the whole record; that this Appellate Court is not bound by the allowances for attorneys' fees fixed by the trial court, but will review the record as a whole and reduce and fix the allowances of attorneys fees to such extent as justice may seem to this Court to require.

Considering, first, the right of this minor son to assert this claim, it is apparently conceded that his right rests upon the determination of the question whether or not he had been emancipated by his father at the time he was working under and for his father.

The authorities seem to agree, as said in *Carthage* v. *Canton*, 97 Me., 473, 54 A., 1104, that a case involving voluntary emancipation of a minor belongs to that class of cases in which the question must be determined upon the peculiar facts and circumstances of each case; that what is emancipation is a question of law, while whether or not there has been an emancipation is one of fact. If

there is no conflict as to the facts, the issue is for the Court. The Chancellor found, and the Court of Appeals concurred, that the facts were undisputed, the evidence on this issue being all set forth in the depositions of Frank Smith, Jr., a complainant, and his father.

The general rule is that voluntary emancipation requires the consent, express or implied, of the parent and involves an entire surrender of all right to the care, custody and earnings of the child, as well as a renunciation of parental duties; and, further, that an agreement must be proven to support a voluntary emancipation, either in writing or in parol, and that proof thereof may be established by circumstances clearly showing a relinquishment by the parent of all parental responsibility and control. But it is well settled that no such agreement will be presumed. As said in one of the older cases (*Hardwick* v. *Pawlett,* 36 Vt. 320), frequently cited, ''the emancipation of a minor is not to be presumed; it must be proved.'' This Court so holds. *Wallace* v. *Cox,* 136 Tenn., 69, at page 72, 188 S. W., 611, L. R. A., 1917B, 690. In the absence of a formal agreement, which there is no attempt to show in the instant case, the proof must show conduct wholly inconsistent with retention by the parent of any degree of parental responsibility or control. Mere relinquishment of the right to the minor's earnings is not enough to establish emancipation. 46 C. J., 342.

The foregoing principles and rules will be found fully treated in an elaborate note beginning on page 117 in Volume 35 of American Reports. Also, in the text and notes on p. 342 of Volume 46 C. J., and on pp. 1672 et seq., of 29 Cyc., where this is said:

''A parent may emancipate his minor child, either entirely or partially, for the whole minority or for a shorter

term, or conditionally or unconditionally, and at what age he will emancipate his child rests in the discretion of the parent."

█ The text cites our own case of *Tennessee Mfg. Co.* v. *James*, 91 Tenn., 154, 18 S. W., 262, 15 L. R. A., 211, 30 Am. St. Rep., 865, and others. This text further reads: "The test to be applied is that of the preservation or destruction of the parental and filial relations." It is also said that in order to establish voluntary emancipation by a parent of his child, it must be shown that he conducted himself in a manner inconsistent with any further performance of his parental duties.

Among numerous cases cited in the note are our cases of *Wallace* v. *Cox*, 136 Tenn., 69, 188 S. W. 611, L. R. A., 1917B, 690; also, *Memphis' Steel Construction Co.* v. *Lister*, 138 Tenn., 307, 197 S. W., 902, L. R. A., 1918B, 406. These Tennessee cases appear to be leading cases dealing with this subject. In both this Court found that emancipation had not been established, that the presumption against it had not been overcome. Lower courts were overruled in both.

It was said in *Porter* v. *Powell*, 79 Iowa, 151, 44 N. W., 295, 296, 7 L. R. A., 176, 18 Am. St. Rep., 353, a leading case, citing Schouler Dom. Relations, Sec. 268, that emancipation both relieves the child of subjection to the parent, with the right to manage his own affairs, and relieves the parent of all legal obligation to support the child. That was a case in which the Court found only a partial or limited emancipation, as was found in our case of *Memphis Steel Co.* v. *Lister, supra.* It was held that the mere relinquishment of the right to the child's services is not enough, that this made out a partial emancipation only, that the parent continued to have other

parental rights. Said the Court: ''A father frees his son from service. That does not waive the right to care, custody, and control, so far as the same can be exercised consistently with the right waived." This expression of the rule appears to fit the facts of the instant case, as will be hereinafter shown.

We have found no better discussion of the doctrine of emancipation as applicable to the facts of the instant case than in the opinion in *Lufkin* v. *Harvey et al.*, 131 Minn., 238, 154 N. W., 1097, L. R. A., 1916B, 1111 Ann. Cas. 1917D, 583, from which we quote beginning on page 240, 154 N. W. on page, 1098:

''The evidence as to emancipation on which defendants rely is as follows: The son was . . . about 18 years old. He was living at home with his parents. . For about two years he had worked out, and for about one year had worked for the Union Depot Company. He secured that job himself, made his own contract, collected his own wages, kept or spent his own money as he pleased, and paid for his board at home. . . .

''Complete emancipation gives to the minor his time and earnings and gives up the parents' custody and control, and in fact works an absolute destruction of the filial relations. [*Inhabitants of*] *Lowell* v. *Inhabitants of Newport*, 66 Me., 78. Emancipation may, however, be partial. A minor may be emancipated for some purposes and not for others. The parent may authorize his minor child to make contracts of employment and collect and spend the money earned and still not emancipate him from parental custody and control. *Porter* v. *Powell*, 79 Iowa, 151, 44 N. W., 295, 7 L. R. A., 176, 18 Am. St. Rep., 353; *Hunycutt & Co.* v. *Thompson*, 159 N. C., 29, 74 S. E., 628, 40 L. R. A. (N. S.), 488, Ann. Cas., 1913E, 928. . . .

"When we consider that complete emancipation involves an absolute destruction of the filial relation, it is quite clear that it should not be inferred from the fact alone that the parent gives the child the right to hire out and collect and disburse his earnings. It is matter of common knowledge that, in very many, if not in most, cases where such right is given to minor children living at home there is no thought of destruction of the filial relation."

In our case of *Wallace* v. *Cox, supra,* the minor was away from home, earning wages and paying her board; while in the *Lister case, supra,* the son was living with the family and turning over regularly to his mother a part of his wages to help pay household expenses. In neither of these cases was the minor working for his father, as in the instant case. In both this Court affirmed the general rule of presumption against emancipation and that the burden of proof is on the party asserting it.

With the foregoing governing principles in mind, we consider the facts of the instant case.

The undisputed proof shows that this boy was put to work by his father when he was 15 years old, in this business operated by the father; that his hours and duties and wages were at all times fixed by his father; also, it is clearly shown—a most significant fact—that his father exercised control over the son in the matter of his education. It appearing that the son attended school from time to time, Frank Smith, Jr., was asked and answered: "He (his father) required you to go to school? Ans. Yes, sir." This is, of course, absolutely inconsistent with the theory of emancipation. The father "required," not requested, this minor son, working for and living in his father's home, to attend school and the

son obeyed this requirement and thus recognized his father's authority. While the father and son testify that the son drew and expended his wages, and, although he lived at home, paid "board" to his mother, and paid for his clothing and other living expenses (the son says his custom was to give his mother one-half of whatever he got from time to time, as wages), the proof is that the father gave to this son at different times while the son was so working three or four automobiles, which he drove and used for his convenience and pleasure.

In an exhaustive review of the authorities we have found no case in which emancipation has been held to be established by facts such as we have here, where the son worked for his father and never for others; where the father fixed the son's duties and hours of work and determined the amount of his wages; where he lived always in his father's home, and where his father directed and controlled his schooling and made from time to time large contributions to his convenience and pleasure, particularly in the matter of furnishing him transportation. And it will be borne in mind that we have here no pretense of a showing of any agreement or expression of a purpose on the part of the parent to relinquish or abandon the parental relationship. No son could in such circumstances maintain an action against his father for excess wages. And his right to maintain this action against the defendants rises no higher.

We find no reversible error in the decree of the Court of Appeals affirming the Chancellor and awarding judgment in favor of complainants below, Potter and Ricks. There is a concurrent finding of the Chancellor and Master in their favor in the amounts decreed. The insistence plausibly made here is that (1) they should be repelled

altogether because they consciously asserted claims that were not only excessive but grossly exorbitant, which they concealed and delayed presenting, etc.; that (2) they should not be allowed the damages in double the wages decreed, provided for in the Federal Act, in view of the equities above noted; and that (3) in any event the case is not one for the allowance of attorney fees.

Complainants elected in this case to bring their suit in the Chancery Court, a Court of Equity, where penalties and forfeitures are not favored. Gibson, Sec. 296. And, as said in *Sartain* v. *Dixie Coal & Iron Co.,* 150 Tenn., 633, at page 646, 266 S. W., 313, at page 316, following *Lenoir* v. *Mining Co.,* 88 Tenn., 168, 14 S. W., 378, "Having thus sought the assistance of a court of equity, he could not be heard to dispute its fundamental maxims. Whether the plaintiff comes under the original or under the statutory jurisdiction of the chancery court, he must come with clean hands, and must, in a proper case, do equity." And see *East Tennessee Brewing Co.* v. *Currier,* 126 Tenn., 535, 150 S. W., 541, 545, point 5, where it is held that penalties will not be enforced where the equities of the situation "justify the interference of the courts" to adopt the words of Judge COOLEY. Cooley on Taxation, Vol. 2, p. 901. We have here a suit to enforce mandatory provisions of an act of Congress in which unliquidated damages are prescribed in every case of violation of the act. We are cited to no case in point.

Conceding, but not deciding, that in an action brought in equity to recover under this Federal statute, the Court might, in a proper case, refuse to enforce the penalty in the form of liquidated damages, or, perhaps, give application to the doctrine of unclean hands and dismiss the suit altogether, we are not of opinion that either of

188

these dispositions is demanded in so far as these two complainants are concerned. The charges of bad faith, collusive and purposeful, entrapping delay are directed chiefly to complainant Smith, as to whom we have heretofore denied recovery on another ground. However, we are constrained to give heed to the challenge of the reasonableness of the fee allowed below of attorneys' fees to the complainants. These allowances appear to us to be excessive. As heretofore shown, Potter demanded and sued for $772.91 and Ricks $871.61, plus equal sums as damages. The Chancellor cut their claims to $282.87 and $323.26, respectively, and damages in equal amounts, not only rejecting, but characterizing their testimony as to large part of their claims as incredible and false. But the Chancellor, notwithstanding, allowed to Potter attorney fees of $186.71 and to Ricks $213.37, approximately 65 per cent of the wages recovered.

■ It is plausibly argued, in view of the unconscionable and unsupported amounts sued for, that the allowance for attorney fees should be nominal only, if any. In the recent case of *Robinson & Co.* v. *Larue,* 178 Tenn., 197, 156 S. W. (2d), 432, 433, an action at law to recover wages under this Fair Labor Standards Act, this Court approved the judgment of the Court of Appeals in reducing the attorneys fee from $300 allowed by the trial Court to $1, it appearing that the employee withheld all notice or complaint until after he had been discharged and the employer was not upon actual notice of the application of the act. This Court approved the holding of the Court of Appeals that, ''a wide discretion was vested in the courts as to the amount of attorneys' fees awarded, the Act providing for 'reasonable attorney's fee,' 29 U. S. C. A., section 216(b), and that under the

facts appearing only nominal compensation should be allowed." Not only is it true of these complainants, as the Court there said it was of the employee in the Larue case, that he never made any claim until after his services had been dispensed with, but in this case, as did not appear in that, the demands prosecuted were some three times greater than the proof sustained. And a further equity in favor of these defendants below arises from the undisputed fact that they were not aware of the violation complained of and had no part in it and are liable at all only by reason of the legal consequence of their connection with the business.

It is said that the trial Court determined the amounts of these fee allowances after hearing expert opinion of lawyers whose testimony was not brought up on appeal. It will be assumed that this testimony supported the amounts decreed in this regard, but whatever it was, it is well settled that this Court is not bound by such testimony and may wholly disgard it when in its judgment the fees allowed are excessive or inequitable. See *Cooper & Keys* v. *Bell*, 127 Tenn., 142, headnote 5, 153 S. W., 844, Ann. Cas., 1914B, 980; *Deen* v. *Crenshaw*, 128 Tenn., 123, 158 S. W., 987, and other cases. The question is not whether or not these attorneys performed services of a character and to an extent justifying the fees allowed, but whether these defendants should pay the bill, rather than the clients these attorneys have well served. We have reviewed this record and in the exercise of our reserved discretion, hold that an allowance against the defendants below of ten per cent of the total recoveries should be decreed and no more.

A question is made as to the liability of defendant Garber, the guarantor of the agreement of sale of the

partnership interest of Smith, Senior, but we think this issue was foreclosed by the verdict of the jury and the decree of the Chancellor holding that it was the intention of the parties that Garber should be bound.

One other matter calls for comment. Defendants alleged and relied on payments to complainants of small sums and the execution of written releases of all claims for wages, etc., and complaint is renewed here of the holding by the Chancellor and Court of Appeals that these releases were ineffective, in view of the mandatory provisions of the Federal Act, to relieve against violation of its terms. We are satisfied with the holding of the lower courts. While the United States Supreme Court has not passed on the question, this holding is in accord with such courts as appear to have considered it. These authorities are cited on the brief filed by solicitors for United States Department of Labor, as *amicus curiae.*

The decree of the Court of Appeals is modified so as (1) to dismiss the suit as to complainant Smith, (2) reduce the attorney fees to ten per cent of the recoveries, and the decree is otherwise affirmed.