ELOISE BRUMFIED, AN INFANT v. ROY BENNETT BRUMFIELD

January 26, 1953.

Record No. 4028.

Present, Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Edmunds, Whitehead, Baldwin & 'Graves,* for plaintiff in error.

*Howard W. Rhodes, Jr.* and *James C. Holloran, Jr.,* for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in this action is the infant daughter of the defendant. She brought this suit against her father to recover damages for injuries which she alleged were due to his gross negligence in operating an automobile in which she was riding with him as a guest. By appropriate pleadings issue was joined on whether the plaintiff had been emancipated. A jury being waived, the court heard the evidence *ore tenus* on the question of emancipation and decided that the plaintiff had not been emancipated, was therefore not entitled to maintain the action, and entered final judgment for the defendant. The main assignment of error is to that ruling.

All of the evidence in the case comes from the defendant and his mother, they being the father and grandmother of the infant plaintiff, who is the only child of the defendant and his wife. The wife died November 26, 1949, when the plaintiff was about eleven years old. Some three weeks prior to the wife's death, when she was preparing to go to the sanatorium where she afterwards died, she turned the child over to the grandmother, saying, "I am giving you over to Grandmother." The grandmother so testified, and added, "And my son gave her over to me, said I was to have her, to look after her and take care of her." The court asked her if this was just an arrangement by which the child was turned over to her, and she said it was; but she also said that she agreed to take the child and look after her "as long as I lived," and that if the mother had recovered and asked for the child she would have "told her to come on out and stay with us;" and that she would not have delivered the child back to its father if he had asked for her.

The grandmother, sixty-five years old, is a widow with eleven children and makes her home with one of her daughters in the town of Gretna. She took the child there to live and testified

that from that time until the happening of the accident on July 4, 1951, after which the child went to the hospital, she had looked after the child, supported her and made the decisions with respect to her welfare and comfort; that during that time her father had not contributed anything toward her support and maintenance, and she had never asked him to do so; that he asked her permission when he wanted to take his daughter to Sunday school or to go riding, and he had never exercised any parental authority over the child during the time the latter was with her; that there had been no adoption proceedings and no mention ever made of that. She testified that she owned a farm, which was rented to another one of her sons, where she spent a week or more at a time in the summer and from which she received a share of the products, amounting to five or six hundred dollars a year.

The father of the plaintiff, the defendant in this action, is about forty years old and still a widower. He works in Danville, 28 miles from Gretna, and makes $48 a week. He lives there in a room shared with another man. He testified that his daughter was with his mother as a matter of convenience and that there had been no legal proceedings to divest him of his rights to her; that he went to see his daughter about once a week, took her presents on her birthday and at Christmas and had given her some money; that he considered his daughter his dependent, and had so listed her on his income tax report ever since his wife died. He was asked whether at the time he turned the child over to his mother it was his intention to be relieved from contribuing to her support, and he replied, "No, sir, I didn't feel that way about it." He said that at that time he had a load to carry, had burial expenses and doctor bills to pay and things of that kind; that he was not undertaking "to wash his hands" of the child and that if his mother had not been able to care for her he would do all he could to support her. He was asked whether he had obligated himself to pay her bills at the hospital and replied that he had signed papers there about some insurance he carried, "a little protection for her hospital bill."

On cross-examination he said he turned the child over to his mother to rear as she saw fit, with nothing said about having the child back any time he wanted it; that he was not in a position to look after her and was concerned with her welfare; that he had not tried to make any decisions as to her schooling, medical

care or support, and did not think he had a right to do that because he had turned all of his parental authority over to his mother.

█ Whether the defendant had emancipated his daughter so as to give her the right to maintain this action against him for a tort was a question of fact under the evidence so adduced. *Cf. Wood* v. *Wood,* 135 Conn. 280, 63 A. 2d 586.

The conclusion of a trial judge after an *ore tenus* hearing on a question of fact is entitled to great weight because he saw and heard the witnesses testify. *Wyckoff Pipe, Etc., Co.* v. *Saunders,* 175 Va. 512, 516, 9 S. E. 2d 318, 320. His judgment on the evidence cannot be disturbed unless it is plainly wrong or without evidence to support it. Code 1950, § 8-491. Like the verdict of a jury it settles the conflicts in the evidence in favor of the successful party and entitles him to all reasonable inferences from the testimony. The decision here by the trial court adverse to the plaintiff is supported by the evidence and the fair inferences from it and hence is controlling on this appeal. Among other things the court doubtless considered the effect on the testimony of the two witnesses of the fact that the defendant carried liability insurance enough to pay the amount sued for. The fact that the father did not intend to be completely relieved of the support of his only child, and continued to claim her as his dependent for income tax purposes, furnished substantial basis for the court's conclusion. The over-all facts and circumstances are consistent with a temporary custody given because of an emergency.

It is well settled, and is not controverted in this case, that an emancipated infant may maintain a tort action against a parent. Annotation 19 A. L. R. 2d at p. 437 and cases there cited. Emancipation, however, is never presumed but must be clearly proved and the burden of proof rests upon the person alleging it. *American Products Co.* v. *Villwock,* 7 Wash. 2d 246, 109 P. 2d 570, 132 A. L. R. 1010 at pp. 1024-25; *Cafaro* v. *Cafaro,* 118 N. J. 123, 191 A. 472. It must be determined upon the peculiar facts and circumstances of each case. *Fiedler* v. *Potter,* 180 Tenn. 176, 172 S. W. 2d 1007, 1009; *Spurgeon* v. *Mission State Bank,* 8 Cir., 151 F. 2d 702.

█ Emancipation of a minor may be express or implied, partial or complete. Complete emancipation means the freeing of the child for all the period of its minority from the care, cus-

tody, control and service of its parents, conferring on the child the right to its own earnings and terminating the parents' legal obligation to support it. Partial emancipation frees the child for only a part of the period of minority, or from only a part of the parents' rights, or for some special purpose such as the right to its own wages. 67 C. J. S., Parent and Child, §§ 86-89, pp. 811-815; 39 Am. Jur., Parent and Child, § 64, p. 702; *American Products Co.* v. *Villwock, supra; Fiedler* v. *Potter, supra. Cf. Buxton* v. *Bishop,* 185 Va. 1, 37 S. E. 2d 755, 165 A. L. R. 719 and Annotation beginning at p. 723.

''Parental emancipation was unknown to the common law. Although it ordinarily relates to the services and earnings of the child and the right to sue and recover therefor \* \* \*, and, so confined, is termed partial emancipation \* \* \*, in its general sense it signifies a surrender and renunciation of the correlative rights and duties touching the care, custody, and earnings of the child. \* \* \* Borrowed from the Roman law, the term imported under that system full enfranchisement by the father.'' *Cafaro* v. *Cafaro, supra,* 191 A. at pp. 472-73.

'' 'Complete emancipation' loses to the parent custody and control; in fact, works a severance of the legal filial relation as completely as if the child were of age.'' *Memphis Steel Const. Co.* v. *Lister,* 138 Tenn. 307, 197 S. W. 902, 903. *Fiedler* v. *Potter, supra; Groh* v. *W. O. Krahn, Inc.,* 223 Wis. 662, 271 N. W. 374; *Bjornquist* v. *Boston & A. R. Co.,* 1 Cir., 250 F. 929, 5 A. L. R. 951 at p. 956; *Swenson* v. *Swenson,* (Mo. App.), 227 S. W. 2d 103, 20 A. L. R. 2d 1409 at pp. 1412-13; Annotation 113 Am. St. Rep. at p. 120.

''\* \* \* Some of the cases that deal with this phase of law use the word 'emancipate' broadly, and without taking occasion to make the distinction between complete emancipation and partial emancipation, or emancipation ad hoc.'' *Memphis Steel Const. Co.* v. *Lister, supra,* 197 S. W. at p. 904.

Complete emancipation, operating as it does to sever completely the family relation, ought not lightly to be inferred; whereas partial emancipation, which has only a limited effect on that relation, is to be more readily implied. ''The law should be slow to put the parent to the hazard of losing all control over his own child, by imputing to him an intent (and it must be his intent that governs) to completely emancipate.'' *Memphis Steel Const. Co.* v. *Lister, supra,* 197 S. W. at p. 903. *Daniel* v. *At-*

*lantic Coast Line R. Co.,* 171 N. C. 23, 86 S. E. 174. Such intent is not to be implied from the mere fact that a child is under the temporary control of a person other than the parent. 39 Am. Jur., *Idem,* § 64, p. 704 and cases cited in note 16.

Since it is the existence of the filial relations that constitutes a bar to the maintenance of an action for negligence by the child against the parent, the emancipation that removes the bar must be complete emancipation by which the filial relation has been terminated. As was said in *Cafaro* v. *Cafaro, supra,* 191 A. at p. 474, which was a suit by the father against his infant son, ''even emancipation limited to the minor child's services and earnings would not suffice to remove the disability thus laid upon the parent in respect of tortious injury sustained at the hands of the child. There must be emancipation in the primary sense of complete severance of the filial tie. Partial emancipation is not to be given a scope beyond the parent's intention.''

The plaintiff not having been emancipated, her position is that of an infant child suing her father because of his negligence. She is precluded from maintaining the action under the law of this State, as applied in the case of *Norfolk Southern* v. *Gretakis,* 162 Va. 597, 174 S. E. 841. In that case the plaintiff was denied the right to compel contribution by a father whose negligence had concurred with that of the plaintiff in causing injury to his infant daughter because, it was held, the infant had no right of action against her father. It was there said: ''According to the great weight of authority an unemancipated minor child cannot sue his or her parent to recover for personal injuries resulting from an ordinay act of negligence.'' 162 Va. at p. 600, 174 S. E. at p. 842. The reasons for that rule have been frequently stated and need not be now repeated. Those given in *Cannon* v. *Cannon,* 287 N. Y. 425, 40 N. E. 2d 236, well apply to the facts here.

We recently adhered to that rule in refusing a writ of error in the case of *Adameit* v. *Allison, Adm'r,* 193 Va. at p. lxix, in which the briefs cited the authorities used by the plaintiff in this case in arguing that the rule should be changed. In a very full annotation in 19 A. L. R. 2d at page 423 the cases are reviewed and at page 439 it is said that they run strongly to the effect that an unemancipated minor cannot maintain an action against his parent to recover damages for negligence, citing

cases from twenty-seven jurisdictions so holding, including the *Gretakis* case.

In *Worrell* v. *Worrell,* 174 Va. 11, 27, 4 S. E. 2d 343, 349, an infant was allowed to maintain an action against her father for negligence because ''the injuries were occasioned in the performance of the duties of a common carrier, not in the parental relation,'' as in the *Gretakis* case, which is discussed and distinguished. The opinion in the latter case itself states that its holding is distinguishable from cases where the father has emancipated the minor, or has assumed to it the relation of master to servant, or the action is against the master of the father for the negligence of the father.

No such exception exists here to prevent the application of the general rule. It was specifically held in the *Gretakis* case and repeated in the *Worrell* case that the fact that the father carried liability insurance created no liability or cause of action where none otherwise existed. So it is generally held. Annotation, 19 A. L. R. 2d at p. 435.

Neither is an exception to be made because gross negligence is here alleged against the father. It was treated as having been alleged in the *Gretakis* case and was found to exist in the *Worrell* case.

In the first count of her amended motion for judgment the infant charged her father with gross negligence. In the second count the same facts were charged to have constituted a wilful and wanton disregard of the plaintiff's safety. This was mere conclusion and insufficient to charge an intentional wrong. Several courts have held, or at least intimated, that an action against the father may be maintained where the injury or death of his child was due to his wilful or malicious act. Annotation, 19 A. L. R. 2d, *supra,* at p. 451. That is not the case here and we express no opinion on that question.

The judgment below is

*Affirmed.*