SNEED, J.,
delivered tlie opinion of the court:
The action is brought by A. It. Toncray for the use of Wm. J'. Toncray, his brother, against Chas. P. Toncray, as executor of J ackson C. Toncray, deceased, the father* of the nominal and real plaintiff and the defendant, in an account for board, tuition, and clothing furnished by A. P. Toncray to Iris sister Julia. The account is for $857, and it was sold and transferred by A. It. Toncray to Wm. J. Toncray, for, at net, $105, and this action is brought for the us© of the latter upon the following state of facts: Prior to the year 1868, the date of the first item of account, Jackson C. Toncray, the testator of defendant, and the father of Julia, and all the other parties, was living in Abingdon, Va., where he was keeping house. His daughters, one of whom was Julia, was living with Mm, his wife having died in 1862. The old man was possessed of a small estate, amounting to three thousand dollars or more. While his daughters lived with him, he provided for them in every proper manner. They left him alone and went to Iowa, without fault on his part, as far as we are advised-by the record. He complained of tMs, and said they had not treated Mm right, and declared his intention to do nothing more Tor them. The old man left Abingdon, and came to Elizabethton, in Carter county, Term., and from that time to. the time of his death, in 1874, he had his abode with one of his sons in Elizabethton. The daughter, Julia, came 'back from Iowa, to Carter county, and was living with one of her *410 brothers, when the nominal plaintiff in this aotion, A. R. Toncray, sent for her and undertook to have her educated and maintained at his own expense, without privity with his father, and this, he says, he undertook with his own free will, without intending or expecting to be reimbursed by Ms father oi any other person. His father, in his lifetime, made no promise of reimbursement, nor did he ever malee any such demand of his father, nor did his father ever, ir any manner, recognize any obligation to him, but his father always said he would not pay Mm; but that if the other boys would do as well by their other sisters as the nominal plaintiff had done for Julia, there would, perhaps, be enough of Ms estate to compensate them all. After the old man’s death, and the qualification of Ms executor, this action was brought. Upon waiver of a jury trial, the matters in controversy were submitted to the circuit judge, who was of opinion that the plaintiff was entitled to recover, and judgment was rendered accordingly for the sum of $48J and costs. The defendant appealed.
We are of opinion that the judgment is erroneous, and that, upon the foregoing facts, no recovery can be had. The principles of law wlrich must be held decisive of the rights of the parties are obvious and elementary. The brother-, in this case, as a volunteer, undertook the maintenance and education of Ms sister, with a full knowledge of the fact that she had defied the authority of the father, had abandoned his home and protection — and without any intention whatever of ever looking to the father for payment. While the daughter was sub potestate pa-rentis in fact, the father was bound to support her, and that obligation might be enforced against him as a legal duty if she had been compelled by bad treatment to abandon the paternal roof. The law would compel him to furnish the infant daughter, under such circumstances, the necessaries of life. The parent is bound by positive laws to protect, to educate, if *411 able to do so, and to maintain bis child during its minority, .or until its pater familiatum or voluntary abandonment of the parent’s protection. But the duties of this relation are mutual and reciprocal. The parent is bound to provide for the child; but he is, on his part, entitled to the obedience, to the custody, and to the services of the child. If the authority of the parent is abjured by the child without any necessity occasioned by the parent, all legal obligation to provide for the child is at an end; and in such case, ihe parent cannot be made liable for even necessaries furnished his child by a volunteer, except by Ms consent. Tyler Inf., 101; Par. Cont., *305; Chitty Cont., 119; 2 Story Eq., 1347a; Gordon v. Potter, 17 Verm., 350; Raymond v. Loyl, 10 Barb., 483. In point of law, said Lord Abinger, a father who gives no authority, and enters into no contract, is no more liable for goods supplied to his son than a brother’, or uncle, or a mere stranger would be. Mortimer v. Wright, 6 M. & W., 482; Schoul., Dom Red., 328 et seq. The English cases, says Mr. Story, seem to establish the proposition that the father cannot be made liable for necessaries furnished his cMld by volunteers, except by his own consent, expressed or implied. 2 Story Eq., 1347a. In the case of Gordon v. Potter, 17 Verm., 348, in case of Redfield estates, the doctrine is thus: “It is obvious that the law makes no provisions for strangers to furnish children with necessaries against the wild of the parents, even in extreme cases, for if it can be done in extreme cases, it can be done in every case where the necessity exists, and the right of the parent to control Ms own child will depend on Ms furnishing necessaries suitable to (lie varying tastes of the time. There is no stopping place short of this if any interference is allowed.” And thus it was held in Raymond v. Loyl, 10 Barb., 483, that a third person who supplies an infant with necessaries, cannot maintain an action against the parent therefor, unless the latter has expressly or impliedly contracted to pay the amount. Tyler Inf., 111. But the duty of the parent to *412 protect and maintain Ms minor child, though recognized and enforced by the municipal laws, has its foundation in the jus excelsior of natural obligation, which imposes the reciprocal duty of respect, obedience, and service upon the child thus fostered and maintained. And it is only so long as the child is found in the line of filial duty in this respect that the law will enforce the reciprocal obligations of the parent. In the case before us the child had repudiated this obligation, had abandoned her father’s home, and abjured his authority without his fault; and under such circumstances, no promise to pay a mere volunteer for the maintenance- of the child can be implied on tire part of the parent. He who intervenes in such a case to make the child independent of the parent, does but encourage its alienation from the line of filial duty, and stands- in no relation to be favored by the law. The nominal plaintiff had voluntarily assumed the burden with a full knowledge of the facts, and with no expectation of reimbursement, 'and in such a case he cannot be permitted to contravene his good intentions.
Let the judgment be reversed, and judgment entered here for the defendant.