DR. RAYMOND WALLACE *v.* A. J. COX *et al.*

(*Knoxville*. September Term, 1916).

1. **PARENT AND CHILD. "Emancipation."**

"Emancipation" of a child is the relinquishment by a parent of control or authority over the child, conferring on him the right to his own earnings and terminating the parent's legal duty to support; it may be express, as by voluntary agreement of parent and child, or implied from such acts and conduct as import consent, and it may be conditional or absolute, complete or partial. (*Post, p.* 73.)

Cases cited and approved: Toncray v. Toncray, 2 Tenn. Cas., 408; Tenn. Mfg. Co. v. James, 91 Tenn., 154; Rounds Bros. v. McDaniel, 133 Ky., 669.

2. **PARENT AND CHILD. Emancipation. Burden of proof.**

The emancipation of a minor is not to be presumed and must be proved and the burden of proof is on the father claiming immunity from liability because of it. (*Post, pp.* 73-76.)

Cases cited and approved: Lowell v. Inhabitants of Newport, 66 Me., 78; Lisbon v. Lyman, 49 N. H., 553.

Case cited and distinguished: Porter v. Powell, 79 Iowa, 151.

3. **PARENT AND CHILD. Emancipation.**

Where a minor daughter is from home for temporary employment, leaving part of her clothing and bedding at home, even though she receives wages for her labor for her own use, there is no such change in the parental and filial ties as to constitute an emancipation. (*Post, p.* 76.)

Case cited and approved: Searsmont v. Thorndike, 77 Me., 594.

4. **PHYSICIANS AND SURGEONS. Liability of parent for medical services. Partial emancipation.**

Where, when a father moved, his minor daughters remained in the city, living at a Y. W. C. A. and earning their own

living, and, when one daughter became sick, so that an operation was necessary, the father gave his assent by telephone, though only to the girl's sister and not to the doctor, it not being communicated to the latter until after the operation, there was only a partial emancipation of the sick daughter, and a promise on the part of the father to pay for the operation was implied by law. (*Post, p.* 76.)

FROM HAMILTON.

Appeal from the circuit court of Hamilton County. —NATHAN L. BACHMAN, Judge.

MURRAY & DRAPER, for appellant.

JOE FRASSAND, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit by Wallace, a practicing physician and surgeon, to recover for a surgical operation and attendance on Eva Cox, the seventeen year old daughter of defendant Cox.

Cox formerly lived in Chattanooga, but about three years before the occurrence here involved he had removed to the adjoining county of Bradley. Two of his daughters, Mary and Eva, decided to and did remain in Chattanooga to earn their own living. This they continued to do without aid from the father. The two girls were boarding at the Y. W. C. A. building when the younger sister, Eva, became ill. Dr. Wal-

lace was called in by the matron and, after prescribing for her for a time, decided that an operation was necessary to remove an ovarian tumor. Mary Cox telephoned the father that the doctor advised that Eva needed to be operated on. The doctor had stated that the operation would be a slight one, and when the father inquired whether an incision would have to be made, Mary replied that it would not, and that the operation would be a slight one. He replied, "Well, then, if it must be done, it must be done." Mary responded that Eva would go for the operation the next day.

Mary Cox testified that Dr. Wallace did not ask her to telephone to the father, and that she did not inform him that she had done so for several days after the operation. The surgeon testifies that in performing the services, he looked to the father for compensation.

Defendant Cox testified that he failed to hear the name of the surgeon over the telephone; that had he been informed that an incision was required, he would have gone to Chattanoga and had the operation performed by another surgeon, with whom he was personally acquainted; and that he was not asked to and did not promise to pay for the operation.

The operation was successful. Bills were sent to the father, who paid no attention to them; whereupon suit was brought.

The circuit judge, sitting without the intervention of a jury, held defendant Cox not liable. The court

of civil appeals divided on the question, the majority holding that plaintiff was entitled to recover as upon an implied contract.

The liability of a father for necessary medical attention given a child who has not remained as a member of his immediate family is a question upon which the authorities are at least in apparent conflict. Cases fairly supporting either of the opposing rulings of the lower courts may be found, but a number of those holding with the judgment of the circuit court take color from English cases which proceed upon the principle that a father is under only a moral obligation to support his child.

The obligation of the parent to support his child at common law was not well defined, but in this State, it has been held, more nearly in accord with the natural sense of justice, that the obligation is not merely moral, but legal, and enforceable as a legal common-law duty. *Toncray* v. *Toncray,* 2 Tenn. Cas., 408.

It therefore follows that if the parent neglect that duty, any other person who supplies such necessary attention to the child is deemed, ordinarily, to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent.

The conflict in the authorities, above referred to, is due in large part to the view the respective courts entertain of the extent in the given case of the emancipation of the absent child.

''Emancipation'' of a child is the relinquishment by the parent of control and authority over the child, conferring on him the right to his earnings and terminating the parent's legal duty to support the child. It may be express, as by voluntary agreement of parent and child, or implied from such acts and conduct as import consent; it may be conditioned or absolute, complete, or partial. *Tennessee Mfg. Co.* v. *James,* 91 Tenn., 154, 18 S. W., 262, 15 L. R. A., 211, 30 Am. St. Rep., 865; *Rounds Bros.* v. *McDaniel,* 133 Ky., 669, 118 S. W., 956, 134 Am. St. Rep., 482, 19 Ann. Cas., 326, and note; 2 Words & Ph. (section series) 242.

The emancipation of a minor is not to be presumed, and must be proved; and the burden of proof is on the father claiming immunity because of it. *Lowell* v. *Inhabitants of Newport,* 66 Me., 78; *Lisbon* v. *Lyman,* 49 N. H., 553.

In our opinion defendant Cox did not successfully carry that burden. Any emancipation indicated by the proof was limited or partial, not general or complete. The effort of the daughter to earn her own support was praiseworthy and tended to lift a burden that rested on the father himself, and the courts should be slow to permit the fact to become a shield for his protection, at least where a full emancipation is not shown. The restoration of the daughter in consequence of the surgical operation was itself beneficial to the father, since it gave the daughter ability to further relieve him, unless we are to as-

sume to his and the law's discredit that he no long-
er owed the duty to receive and provide for her as
an invalid in his home.

A well-reasoned case in point as to emancipation is
*Porter* v. *Powell*, 79 Iowa, 151, 44 N. W., 295, 7 L.
R. A., 176, 18 Am. St. Rep., 353, where it was held
that a father was liable for a physician's services to
his minor daughter, seventeen years of age, attacked
by typhoid fever, thirty miles from her father's home,
at a place where she had resided for a period of three
years, earning and controlling her own wages, and
providing herself with clothing, the father not fur-
nishing or agreeing with the daughter to furnish her
any means of support, but consenting to her absence
from home.  The court said:

"There being no direct evidence as to the purpose
of the defendant with respect to his daughter, we are
to say with what intention he consented to his daugh-
ter's going and remaining away from his home as
she did.  That he intended she should control her
own earnings, at least until such time as he should
declare otherwise, is evident; but that it was ever his
intention that if, by sickness or accident, she should
be rendered unable to support herself, he would not
be responsible to those who might minister to her
actual necessities, we do not believe.  Such an infer-
ence from these facts would be a discredit to any
father.  In our view, there was, at most, but a par-
tial emancipation—an emancipation from service for
an indefinite time.  The father had a right at any

Wallace v. Cox.

time to require the daughter to return to his home and service; and she had a right at any time to return to his service, and to claim his care, custody, control and support. There was no such an emancipation as exempted the father from liability for actual necessaries furnished to his daughter. In view of the legal as well as the moral duty of appellant to furnish necessary support to his daughter during minority, and especially when unable, from infancy, disease or accident, to earn her own necessary support, we think he may well be understood as promising payment to any third person for actual necessaries furnished. . . . As already stated, what are necessaries must be determined from the facts of each case. What would be necessary support to a child in sickness would not be necessary in health. The services sued for were evidently necessary for the support and well-being of the defendant's daughter.''

That there was in the case before us no complete emancipation, freeing the parent from liability for such necessary attention, is manifest from his own testimony, which shows he stood ready, in one aspect, to impose his own will as to the employment of another surgeon, preferred by him, and by the further fact that the daughters appealed to him for consent to the operation, which he gave.

The modern tendency among women and girls to earn a living, frequently gives occasion for absence from home, and that fact should not readily be held

to deprive them of a claim to support in a time of need. Slight circumstances, if necessary, will be allowed to control the decision.

Thus, if a minor daughter is from home for temporary employment, leaving part of her clothing and bedding at home, even though she received wages for her labor for her own use, it is not so uncommon an occurrence as to authorize an inference of such a change in the parental and filial ties as to constitute an emancipation. *Searsmont* v. *Thorndike*, 77 Me., 504, 1 Atl., 448.

We have in this case no element of abandonment of the parent by the child, or defiance of authority by the latter, and no placing of herself under the protection of another. The ruling in the case of *Toncray* v. *Toncray*, supra, is not in point. There the suit was by a pure volunteer, and some of the elements just noted appeared.

We, therefore, are of opinion that in the circumstances, showing only a partial emancipation and the assent of the father to an operation being performed, there arose a promise on his part to pay, implied by law.

The proper result was reached by the court of civil appeals, and its judgment is affirmed.