M. K. CHURCHILL

*v.*

R. W. CHURCHILL.

*(Jackson,* April Term, 1958.)

Opinion filed April 9, 1958.

Rehearing Denied May 2, 1958.

HANOVER, HANOVER, HANOVER & WALSH, Memphis, for respondent-appellant.

LAUGHLIN, WATSON & CRESON, Memphis, for petitioner-appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This cause originated in the Chancery Court of Shelby County wherein R. W. Churchill was granted a divorce from his wife, Mrs. M. K. Churchill. It appears that Mrs. Churchill had two sons by a former marriage, William K. Churchill and Ronald E. Churchill. These two boys were later adopted by Mr. R. W. Churchill in a formal court proceeding. The decree of divorce, which was entered of record on June 3, 1955, granted Mrs. Churchill the exclusive custody of her two sons. There was a property settlement between the parties, the same being made a part of the decree of divorce. It reads as follows: (We quote the pertinent parts as appears in the brief of counsel, and which we find to be correct).

" 'Whereas, the Complainant is desirous of settling all property rights between the respective parties, as well as making provision for the support of the two children hereinbefore referred to.'

\* \* \* \* \* \* \* \*

" '(2) The Complainant agrees to pay to the Respondent the sum of $250.00 monthly for the support and maintenance of the two children, Ronald E. and William K. Churchill; hereinbefore referred to;'

\* \* \* \* \* \* \* \*

" '(8) Complainant further agrees that the Respondent is to have the custody and control of the two minor children hereinbefore mentioned;'

"and contains the following rather specific and significant language:

" 'This agreement contains the entire understanding and Property Settlement Agreement of the parties hereto, and there are no representations, warranties, promises, covenants or undertakings other than those expressly set forth herein, and each party enters into this contract voluntarily, advisedly, and with full knowledge of the financial nature, character, and value of the other's estate.' "

The record discloses that R. W. Churchill failed to comply with the aforesaid agreement and was in arrears in making monthly payment to Mrs. Churchill for the boys' support to the extent of $985.

On January 30, 1957, Mrs. Churchill filed a written motion in the cause to reduce the aforesaid amount to judgment, and for a *scire facias*. The *scire facias* issued and thereupon R. W. Churchill filed an answer and among other things charged that his two sons had worked during the years 1955 and 1956, and that he was entitled to a credit on said judgment to the extent of those earnings for those years and on any amount that the trial court

found him in arrears under the divorce decree. In this proceeding it was shown without dispute that William K. Churchill earned $818.54 in 1955 and $1,084.37 in 1956; that Ronald E. Churchill earned $38.10 in 1955 and $387.30 in 1956.

The Chancellor refused to permit these amounts to be credited on the judgment. He further held and decreed that since Mrs. Churchill had been decreed the exclusive care and custody of the boys that R. W. Churchill had no lawful right to the earnings of these minor sons, and should not be credited on the judgment or on any future arrearages. The Chancellor further decreed that unless R. W. Churchill paid the amount of the judgment within fifteen (15) days following the entry of the decree he should be forthwith held in contempt and committed to jail.

There was an appeal prayed and granted to the Court of Appeals. In response to the appropriate assignments of error the Court of Appeals modified the Chancellor's decree holding that R. W. Churchill was, as a matter of right under the common law, entitled to the earnings of his minor sons, but since he had made no demands upon their employers for their earnings the Chancellor was correct in disallowing the respective amounts already earned upon the judgment for the total amount then in arrears.

At the time the Court of Appeals decided the issue involved the oldest son, William K., had reached his majority. No further monthly payment would be due as to him. But as to Ronald the appellant would be required to pay $125 per month for several years, or until he reached twenty-one (21) years of age.

410

We granted *certiorari* to review the following assignment of error:

"The Court of Appeals erred in holding that respondent was entitled to the earnings of his minor children if same are demanded, even though the minor children's exclusive custody had theretofore, by divorce decree, been given to the mother. This was error because the right of a parent to the services of a minor child is dependent upon custody of that child."

In support of the foregoing assignment the petitioner, Mrs. Churchill, relies upon the following cases, as well as certain Sections of the Code: *Kenner v. Kenner,* 139 Tenn. 211, at page 221, 201 S.W. 779, at page 782, L.R.A. 1918E, 587; *Kenner v. Kenner,* 139 Tenn. 700, at pages 702, 703, 202 S.W. 723, L.R.A. 1918E, 587; *Graham v. Graham,* 140 Tenn. 328, at pages 332, 333, 204 S.W. 987, at page 988; Section 31-201 (4), T.C.A.; and Section 39-210, T.C.A.

■ We think the learned Court of Appeals was in error in holding that the respondent, R. W. Churchill, was entitled to the earnings of his minor sons when it conclusively appears that he had voluntarily surrendered their custody to the mother, thereby expressly waiving all right to their earnings. He is bound by the agreement with Mrs. Churchill as shown by the terms of the divorce decree. We think the case of *Kenner v. Kenner, supra,* is directly in point as to the right of the respondent to the minor sons' earnings, he having no right to their custody. In that case it is held that generally speaking the father is entitled to the minor child's earnings, he being "a trustee for the child, to protect, and rear, and train it for the duties of life. Incidentally, arising out of the

duty of nurture, maintenance, and education, he is entitled to its reasonable services'', citing cases. ''But he has no property right in the child.''

The Chief Justice goes on to say, noting an exception to the general common law rule:

''* * * If any service for another be in fact performed by a child, if there be no emancipation of the child, the compensation belongs to the father. *Burke v. Ellis*, 105 Tenn. 702, 710, 58 S.W. 855. It is also true that, if the father be unlawfully deprived of custody, he may, after a judgment of restoration, obtain compensation for the reasonable value of the child's services during such unlawful restraint. It is also true that, where the child, in the father's custody, is wrongfully injured by another, the father may enforce against such wrongdoer his demand for the reasonable value of the child's services during the disablement. *But this right is dependent upon the right of actual custody.* * * * Yet all will agree that the father, by the judgment of a court, may be lawfully deprived of the custody of his child without any compensation.'' (Emphasis supplied.)

The right of the father to the earnings of his minor son under the common law imposed upon him certain responsibilities which could not be evaded. Considering his right to his sons' services the law contemplated beyond any shadow of doubt that he should render services to the son, the value of which cannot be measured in dollars and cents. Thus the law enjoined upon him the duty of providing a home for his children, ''bringing them up in the way they should go'', to the end that they become worthy citizens of the State. If this responsibility is

evaded by surrendering their custody, either voluntarily, or by decree of the Chancery Court, as in the case at bar, every right to the child's services and earnings is completely lost thereby.

It cannot be doubted that should either of these sons die intestate his personal estate would pass to Mrs. Churchill to the exclusion of Mr. R. W. Churchill. T.C.A. sec. 31-201. This right is based *upon the mother's right of custody* as set forth in the statute. Moreover, in the event of a suit for the wrongful death of such son, the mother to whom custody has been decreed is the only one who may sue and recover damages for his wrongful death. *Black v. Roberts,* 172 Tenn. 20, 108 S.W. 2d 1097.

It is our well considered opinion that, aside from the legal right of the respondent to the services and earnings of these minor sons, *and which is dependent upon their custody,* the issue is forclosed by the agreement between Mr. and Mrs. Churchill which was approved by the Chancellor. With all deference to the Court of Appeals we think the effect of its decree is to rewrite the divorce decree by adding to it a proviso which would relieve the respondent of his duty to support his children.

■ We have given full consideration to the authorities cited on respondent's brief. They are not applicable to the facts of the case at bar, except *Keller v. City of St. Louis,* 152 Mo. 596, 54 S.W. 438, which we cannot follow since it is in conflict with our own case of *Kenner v. Kenner, supra.* We are in full agreement with the Court of Appeals upon the issue of contempt as well as the reduction of the monthly payments from $250 to $125.

The assignment of error is sustained. The decree of the Court of Appeals is reversed in so far as the respondent is given the right to the services and earnings of his minor son, Ronald, by demanding all such future earnings from his employer. In all other respects the decree of the Court of Appeals is affirmed. The costs of the appeal is adjudged against the respondent, R. W. Churchill.

## On Petition to Rehear

R. W. Churchill has filed a petition to rehear, complaining that the Court overlooked the true meaning of *Black v. Roberts,* 172 Tenn. 20, 108 S.W. 2d 1097 and also Section 20-105, T.C.A.

The cases cited in the original opinion fully justify the conclusion of the Court. The case of *Black v. Roberts, supra,* has no application to the issue made on this appeal, nor has the Code Section referred to any application.

We find no new and persuasive authority cited by counsel and no additional argument is made as required by Rule 32 of this Court.

The petition to rehear is denied.