IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 9, 2005 Session

## PAMELA C. LICHTENWALTER v. CHRIS EDWARD LICHTENWALTER

**Appeal from the Circuit Court for Davidson County**
**No. 91D-575     Muriel Robinson, Judge**

**No. M2003-03115-COA-R3-CV  - Filed January 30, 2006**

This appeal illustrates the problems that befall divorcing parents when they agree, without court approval, to a child support arrangement that is inconsistent with the Child Support Guidelines. Five years after the parents' divorce, the mother filed a petition in the Circuit Court for Davidson County seeking to increase the father's child support obligation. The trial court approved a formula devised by the parties that did not comply with the Child Support Guidelines. The parties later ignored that formula and followed another ad hoc arrangement for approximately ten years. Eventually, the mother filed a petition in the trial court seeking to hold the father in contempt for failing to pay child support and to collect the arrearage. The trial court turned the matter over to a substitute judge who determined that the father was not in contempt because both parties had followed their formula to the best of their abilities even though it was ambiguous. The trial court also set the father's support for the remaining minor child and directed the father to pay $2,375 in additional support for that child. The mother appealed. We have determined that the father owes $64,529 in back child support and that the parties' three children are entitled to this arrearage. Therefore, we vacate the portion of the judgment regarding back child support and remand the case for the entry of an appropriate payment plan.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Dan R. Alexander, Nashville, Tennessee, for the appellant, Pamela C. Lichtenwalter.

Norman E. Solomon, Nashville, Tennessee, for the appellee, Chris Edward Lichtenwalter.

**OPINION**

**I.**

Pamela Lichtenwalter and Chris Lichtenwalter had three children during their marriage – Grant who was born in April 1978, Gavin who was born in December 1980, and Kasey who was

born in June 1986. The parties were divorced in the Chancery Court for Obion County in October 1986. The decree granted Ms. Lichtenwalter sole custody of the three children and directed Mr. Lichtenwalter to pay $525 per month in child support.[1]

In February 1991, Ms. Lichtenwalter filed a petition in the Davidson County Probate Court seeking an increase in child support. She stated that Mr. Lichtenwalter's income had increased significantly[2] and that hers had decreased. Following a hearing in January 1992, the probate court increased Mr. Lichtenwalter's child support to $274.76 per week.[3]

Ms. Lichtenwalter returned to the probate court in October 1991 seeking another increase in child support. On this occasion, Mr. Lichtenwalter responded by seeking custody of the parties' oldest child. On November 12, 1992, the court entered an order granting Mr. Lichtenwalter sole custody of the parties' oldest child. The court also determined that the Child Support Guidelines were "inapplicable as strictly applied" because Mr. Lichtenwalter's salary fluctuated based on his commissions. Accordingly, the court approved a formula for determining child support that had been created by the parties. This formula provided:

> 41% of the net income of the parties as computed in accordance with the Uniform Child Support Guidelines is pooled, and agreed as the cost of support of the three minor children. This gross figure shall be divided by three with the Respondent's support obligation to be the payment of one-third of the gross figure to the Petitioner, but in no event shall this figure be less than Five Hundred Dollars ($500) per month. The child support amount will be computed by the parties on a quarterly basis commencing February 1, 1993. The Respondent shall furnish to the Petitioner a statement of earnings for the three-month period preceding the date for quarterly review. The Respondent's earning from the previous quarter will be the basis for determining the support obligation of the Respondent for the next quarter. All changes in the support obligation shall be prospective only and reviewed each quarter by the parties.[4]

---

[1] The Child Support Guidelines were not in effect when this decree was entered. They did not take effect until October 1989.

[2] Mr. Lichtenwalter worked for the University of Tennessee when the parties divorced and was earning $20,184 per year. He left the University and became a salesman for Institutional Jobbers earning over $48,000 per year.

[3] This child support order was consistent with the Child Support Guidelines.

[4] This formula is entirely inconsistent with the Child Support Guidelines. It did not establish a fixed amount of child support, and it took the custodial parent's income into consideration.

For reasons not apparent in this record, the parties agreed to ignore the formula contained in the November 12, 1992 order and never returned to court to modify or replace it. Instead, they simply agreed that the amount of support for each child should be $500 and that the amount of support they would be entitled to would be based on the number of children living with them. As a result, Mr. Lichtenwalter began paying Ms. Lichtenwalter $500 per month because two children were living with her and only one with him. After the parties' oldest child, Grant, reached majority and graduated from high school in June 1996, Mr. Lichtenwalter began paying Ms. Lichtenwalter $1,000 per month because the parties remaining two minor children continued to live with Ms. Lichtenwalter. After Gavin Lichtenwalter reached majority and graduated from high school in June 1999, Mr. Lichtenwalter reduced his child support payments to $500 per month.

In July 2003, Ms. Lichtenwalter filed a petition in the Circuit Court for Davidson County seeking to hold Mr. Lichtenwalter in criminal contempt for failing to pay the child support required by the November 12, 1992 order and to order him to pay a $39,600 child support arrearage. Mr. Lichtenwalter responded by denying that he had willfully failed to pay child support and by requesting the court to terminate his child support obligations for the parties' two oldest children who had turned eighteen and who had graduated from high school in June 1996 and June 1999 respectively.[5]

The matter was heard on October 20, 2003, and seven days later, the substitute judge filed a memorandum opinion. The judge declined to hold Mr. Lichtenwalter in contempt because he had complied with his agreement with Ms. Lichtenwalter that each child would be entitled to $500 per month in child support. The judge also determined that the child support formula in the November 12, 1992 order was "ambiguous" because it did not provide for a definite amount of child support as required by Tenn. Code Ann. § 36-5-101(a)(2)(A) (Supp. 2003).[6] Notwithstanding the evidence that Mr. Lichtenwalter's income would have called for a far greater amount of child support, the substitute judge decided that the parties, by their conduct over ten years, had agreed to limit the amount of child support to $500 per child and, therefore, that Mr. Lichtenwalter did not owe back child support.

The parties had one remaining minor child at the time of the October 2003 hearing. Accordingly, the substitute judge, using the Child Support Guidelines, set Mr. Lichtenwalter's support for this child at $975 per month retroactive to July 2003. Because the new amount of child support exceeded the amount of support Mr. Lichtenwalter had been paying by $475 per month, the judge directed Mr. Lichtenwalter to pay Ms. Lichtenwalter an additional $2,375 to make up the

---

[5] Tenn. Code Ann. § 34-1-102(b) (2001) obligates parents to support their children until they reach eighteen years of age if the child is in high school. An eighteen-year-old child remains entitled to support until his or her high school class graduates.

[6] This section was amended following the entry of the substitute judge's memorandum. Tenn. Code Ann. § 36-5-101(a)(2)(A) is now found at Tenn. Code Ann. § 36-5-101(c)(1) (2005).

difference. The substitute judge entered a final order embodying these decisions on December 1, 2003. Ms. Lichtenwalter has appealed.[7]

## II.
### THE CLAIM FOR CHILD SUPPORT ARREARAGE

The primary issue on this appeal involves Ms. Lichtenwalter's claim for back child support. She insists that the trial court erred by failing to enforce the terms of the November 12, 1992 order. Mr. Lichtenwalter responds that the trial court correctly excused him from paying back child support based on the parties' informal agreement. We have determined that both parties are mistaken. The parties' informal child support agreement is unenforceable because parents lack the power to enter into agreements that circumvent existing child support orders. Mr. Lichtenwalter's child support obligation should be calculated based on the formula in the November 12, 1992 order until that formula became unworkable in June 1996. Thereafter, it should be calculated based on the Child Support Guidelines.

### A.

Parents have "deeply rooted moral responsibilities" to support their minor children. *Boggs v. Boggs*, 520 U.S. 833, 848, 117 S. Ct. 1754, 1764, 138 L. Ed. 2d 45 (1997) (quoting *Rose v. Rose*, 481 U.S. 619, 632, 107 S. Ct. 2029, 2037, 95 L. Ed. 2d 599 (1987)); *State Dep't of Human Servs. ex rel. Young v. Young*, 802 S.W.2d 594, 600 (Tenn. 1990); *Baker v. Baker*, 169 Tenn. 589, 592, 89 S.W.2d 763, 764 (1935). In addition to their moral responsibility, Tennessee law imposes a legal obligation on parents to support their minor children in a manner commensurate with their own means and station in life. Tenn. Code Ann. § 34-1-102(a). This obligation does not end when parents are divorced. *Brooks v. Brooks*, 166 Tenn. 255, 256, 61 S.W.2d 654, 654 (1933); *Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002).

Ever since 1989, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 36-5-101(e). One purpose of the guidelines is to minimize the impact of divorce on children. Tenn. Comp. R. & Regs. 1240-2-4-.02(2)(e) (Dec. 2003). The guidelines set the minimum amount of support to which children are entitled, Tenn. Comp. R. & Regs. 1240-2-4-.02(5), and they contain a rebuttable presumption that child support will be set using the procedures and formulas contained therein. Tenn. Comp. R. & Regs. 1240-2-4-.01 (2) & 1240-2-4-.02(7).

The primary beneficiaries of child support are the children, not the parents. *Hopkins v. Hopkins*, 152 S.W.3d 447, 449 (Tenn. 2004). A custodial parent's conduct cannot extinguish a non-custodial parent's responsibility to support his or her children, *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991), and the law does not permit parents to waive or circumvent their minor children's

---

[7]Ms. Lichtenwalter does not take issue with the substitute judge's decision to acquit Mr. Lichtenwalter of criminal contempt or with the amount of prospective child support for the remaining minor child.

right to support. *Berryhill v. Rhodes*, 21 S.W.3d 188, 192, 194 (Tenn. 2000) (holding that private agreements to circumvent child support obligations are against public policy); *Huntley v. Huntley*, 61 S.W.3d 329, 335-36 (Tenn. Ct. App. 2001); *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996). Accordingly, even when parents undertake to make their own child support arrangements, the courts have the power – and obligation – to set child support consistent with the Child Support Guidelines unless they make the required findings regarding their reasons for deviating from the guidelines. *See Dement v. Kitts*, 777 S.W.2d 33, 35 (Tenn. Ct. App. 1989) (holding that the courts have the power to order a parent to pay child support despite an agreement by the other parent to the contrary); *see also* Tenn. Comp. R. & Regs. 1240-2-4-.02(4), 1240-2-4-.04(5).

**B.**

The first two orders pertaining to child support entered in this case do not figure prominently in this appeal. The October 1986 divorce decree was entered before the adoption of the Child Support Guidelines, and the probate court's first order entered in February 1992 appears to be entirely consistent with the Child Support Guidelines. The difficulties arose when the parties devised and the trial court approved the child support formula in the November 12, 1992 order.

The formula contained in the November 12, 1992 order is a commendable but unsuccessful effort to establish the parties' child support obligations based on what is now referred to as the "income shares" model. It is contrary to the law prevailing at the time in two significant respects. First, it is based on the income of both parents rather than simply the income of the obligor parent.[8] Second, it did not set the child support in a specific dollar amount.[9] In addition to these two shortcomings, the formula was based on the assumption that the parties were supporting three minor children, and it contained no intelligible provision for fewer than three children. Thus, the parties could not have used their formula, even if it was permissible, after their oldest child became eighteen and graduated from high school.

Despite the shortcomings in the formula, the parties and the trial court agreed to it, and it was incorporated in the November 12, 1992 order. After that order was entered, the parties were obligated to follow it until the trial court modified it or until they obtained some other relief from the court. *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 836-37 (Tenn. Ct. App. 1997); *Rasnic v. Wynn*, 625 S.W.2d 278, 281 (Tenn. Ct. App. 1981). Accordingly, based on the facts of this case, Mr. Lichtenwalter's child support obligation was defined by this order as long as it could be

---

[8] At that time, the Child Support Guidelines did not permit the comparative analysis of the parents' incomes. *Gray v. Gray*, 78 S.W.3d 881, 882 (Tenn. 2002).

[9] *Schuett v. Schuett*, No. W2003-00337-COA-R3-CV, 2004 WL 689917, at *7 (Tenn. Ct. App. Mar. 31, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004); *Price v. Price*, No. M1998-00840-COA-R3-CV, 2000 WL 192569, at *8 (Tenn. Ct. App. Feb. 18, 2000) (No Tenn. R. App. P. 11 application filed); *Stacey v. Stacey*, No. 02A01-9802-CV-00050, 1999 WL 1097975, at *5 (Tenn. Ct. App. Oct. 06, 1999) (No Tenn. R. App. P. 11 application filed); *Quarry v. Quarry*, No. 02A01-9111-CH-00262, 1992 WL 141796, at *3 (Tenn. Ct. App. June 25, 1992) (No Tenn. R. App. P. 11 application filed).

enforced, and no unilateral act or agreement by Ms. Lichtenwalter could excuse him from this obligation.

The formula in the November 12, 1992 order became entirely unworkable in June 1996 when the Lichtenwalters' oldest child graduated from high school after becoming eighteen years of age. At that point, the formula provided no intelligible direction for ascertaining Mr. Lichtenwalter's child support obligation for the younger two children. Had the parties returned to court in June 1996, we have no doubt that the trial court would have jettisoned the formula in the November 12, 1992 order and would have set Mr. Lichtenwalter's child support obligation based on the Child Support Guidelines.[10] Accordingly, after June 1996, the formula in the November 12, 1992 order would have been replaced by the formula in the Child Support Guidelines.

## C.

During the October 2003 hearing, both parties presented evidence regarding their respective incomes between 1993 and 2003 and submitted calculations of what they owed under the November 1992 formula. This evidence undermines the substitute judge's conclusion that the formula in the November 12, 1992 order was too vague to follow. It also demonstrates that the amount of child support that Mr. Lichtenwalter was actually paying was less than the amount that he should have been paying under either the formula in the November 12, 1992 order or under the Child Support Guidelines.

Accordingly, to calculate Mr. Lichtenwalter's child support arrearage, we have separated the time from February 1993 through June 2003 into three periods. The first period, from February 1993 through June 1996,[11] should be governed by the formula in the November 12, 1992 order because all three children remained eligible for support. The second period, from July 1996 through June 1999,[12] must be governed by the Child Support Guidelines as they apply when there are two minor children entitled to support. The third period, from July 1999 through June 2003, must be governed by the Child Support Guidelines as they apply when there is one minor child entitled to support. The following tables illustrate the growth of Mr. Lichtenwalter's child support arrearage during these periods.

---

[10] By that time, the Child Support Guidelines contained provisions specifically directed at parents like Mr. Lichtenwalter whose income varied. In 1994, the guidelines were amended to add Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(b) (Dec. 1994) which states: "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary."

[11] The parties' oldest child graduated from high school in June 1996 and was no longer entitled to support.

[12] The parties' second child graduated from high school in June 1999 and was no longer entitled to support.

**Mr. Lichtenwalter's Child Support Obligation**
**Under the November 1992 Formula**

| Time Period | Due | Paid | Arrearage |
|---|---|---|---|
| February - December 1993 | 6,655.00 | 5,500.00 | 1,155.00 |
| January - December 1994 | 7,004.04 | 6,000.00 | 1,004.04 |
| January - December 1995 | 7,260.00 | 6,000.00 | 1,260.00 |
| January - June 1996 | 4,312.02 | 3,000.00 | 1,312.02 |
| **Arrearage** | | | **$4,731.06** |

**Mr. Lichtenwalter's Child Support Obligation**
**Under the Child Support Guidelines July 1996 – June 1999[13]**

| Time Period | Income | Due | Paid | Arrearage |
|---|---|---|---|---|
| July - December 1996 | 15,078.00 | 4,824.96 | 6,000.00 | -1,175.04 |
| January - December 1997 | 71,591.00 | 22,908.67 | 12,000.00 | 10,909.12 |
| January - December 1998 | 62,334.00 | 19,946.88 | 12,000.00 | 7,946.88 |
| January - June 1999 | 31,135.00 | 9,963.20 | 6,000.00 | 3,963.20 |
| **Arrearage** | | | | **$21,644.16** |

**Mr. Lichtenwalter's Child Support Obligation**
**Under the Child Support Guidelines July 1999 – June 2003[14]**

| Time Period | Income | Due | Paid | Arrearage |
|---|---|---|---|---|
| July - December 1999 | 31,135.00 | 6,538.35 | 3,000.00 | 3,538.35 |
| January - December 2000 | 69,741.00 | 14,645.61 | 6,000.00 | 8,645.61 |
| January - December 2001 | 73,608.00 | 15,457.68 | 6,000.00 | 9,457.68 |
| January - December 2002 | 80,992.00 | 17,008.32 | 6,000.00 | 11,008.32 |
| January - June 2003 | 40,496.00 | 8,504.16 | 3,000.00 | 5,504.16 |
| **Arrearage** | | | | **$38,154.12** |
| **Total Arrearage** | | | | **$64,529.34** |

[13] Because the parties had two minor children during this time, the amount of Mr. Litchtenwalter's support is based on 32% of his reported net income which has been rounded up to the next dollar.

[14] Because the parties had only one minor child during this time, the amount of Mr. Lichtenwalter's support is based on 21% of his reported net income which has been rounded up to the next dollar.

We need not calculate Mr. Lichtenwalter's child support beyond June 2003 because the trial court's December 1, 2003 order set an amount for Mr. Lichtenwalter to pay that went into effect in July 2003. As our calculations demonstrate, Mr. Lichtenwalter's payments of only five hundred dollars per child throughout the years, despite his ample salary, fell far below the requirements of the Child Support Guidelines. Even though the children have all since reached majority, Mr. Lichtenwalter is still responsible for paying this arrearage. *Kuykendall v. Wheeler*, 890 S.W.2d 785, 786 (Tenn. 1994).

The record provides no evidence regarding how much, if any, of the child support that Mr. Lichtenwalter should have paid between 1993 and 2003 was offset by increased financial or other contributions by Ms. Lichtenwalter. Therefore, because the children would have been the primary beneficiaries of the child support had it been paid, we have determined that the parties' three children rather than Ms. Lichtenwalter should receive and benefit from the child support arrearage when it is repaid by Mr. Lichtenwalter. On remand, the trial court is directed to award a $64,529 judgment against Mr. Lichtenwalter and in favor of the parties' three children, which shall accrue interest as permitted by law. The trial court is also directed to equitably divide the arrearage among the three children and to establish a reasonable repayment schedule that will require Mr. Lichtenwalter to pay this judgment in no more than ten years.

## III.
### THE EFFECT OF THE EMANCIPATION OF THE CHILDREN

Ms. Lichtenwalter also asserts that the substitute judge erred by factoring in the emancipation of the parties' two older children even though Mr. Lichtenwalter had not moved to reduce his child support based on the fact that they had reached the age of majority.[15] Relying on this court's opinion in *State ex rel. Parker v. Parker*, No. M2001-01232-COA-R3-CV, 2002 WL 31322531 (Tenn. Ct. App. Oct. 16, 2002) (No Tenn. R. App. P. 11 application filed), Ms. Lichtenwalter insists that the judge retroactively modified the November 12, 1992 decree in violation of Tenn. Code Ann. § 36-5-101(f)(1) (2005).[16] We disagree.

Orders and judgments must be construed in light of the law existing when they were entered. During all relevant periods of time, the Lichtenwalters, like other parents, had an obligation to support their children until the children became emancipated. *Kuykendall v. Wheeler*, 890 S.W.2d at 786; *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 247 (Tenn. Ct. App. 2000); Tenn. Code

---

[15] It is somewhat ironic that Ms. Lichtenwalter would make this argument because she never requested the trial court to relieve her support obligation for the parties' oldest child who was living with Mr. Lichtenwalter. If Ms. Lichtenwalter's interpretation of Tenn. Code Ann. § 36-5-101(f)(1) were correct, the amount of her own child support arrearage would actually be larger than Mr. Lichtenwalter's arrearage for the middle child.

[16] Tenn. Code Ann. § 36-5-101(f)(1) provides, in part: "Such judgment [for child support] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." Prior to 2005, this provision was found in Tenn. Code Ann. § 36-5-101(a)(5).

Ann. § 34-1-102(b).[17] However, the parents' duty to support ended by operation of law either when the parent died or when the child became emancipated. *Weinstein v. Heimberg*, 490 S.W.2d 692, 698 (Tenn. 1972); *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972); *Wallace v. Cox*, 136 Tenn. 69, 73, 188 S.W. 611, 612 (1916); *Wendell v. Sovran Bank/Cent. South*, 780 S.W.2d 372, 373-74 (Tenn. Ct. App. 1989). Accordingly, a court's power to require parents to pay child support extends only as long as they are unemancipated. *Blackburn v. Blackburn*, 526 S.W.2d 463, 466 (Tenn. 1975); *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973).

Until relatively recently, the courts consistently recognized that parents could unilaterally reduce their child support when a child became emancipated. *See, e.g., Churchill v. Churchill*, 203 Tenn. 406, 412, 313 S.W.2d 436, 438-39 (1958); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990). This reduction was consistent with the legal principle that the parent's duty to support had ended by operation of law, and the reductions were effective without court authorization or approval.

In 1987, the Tennessee General Assembly enacted Tenn. Code Ann. § 36-5-101(f)(1) prohibiting courts from modifying child support orders retroactively.[18] Several years later, a custodial spouse argued that this statute prevented courts from excusing a parent from paying child support for an emancipated child unless the obligor parent had obtained a modification of the support order on or before the date of the child's emancipation. While this court held that Tenn. Code Ann. § 36-5-101(f)(1) did not permit "proration" of the child support for an emancipated child, the Tennessee Supreme Court disagreed. The court held that

> [p]roration . . . is not a retroactive modification of the child support award and its application does not require a petition to, or an order from, the court. Instead proration is simply a rule of law which derives from the legal principle that parents generally owe no duty to support children who have attained the age of majority.

*Clinard v. Clinard*, No. 01S01-9502-CV-00021, 1995 WL 563858, at *2 (Tenn. Sept. 25, 1995), *pet. reh'g denied* (Tenn. Nov. 6, 1995).[19]

The Tennessee Supreme Court's holding in *Clinard v. Clinard* controls this case.[20] Factoring in the reality that two of the Lichtenwalters' children had become emancipated for the purpose of

---

[17]As far as this record shows, the Lichtenwalters' children are not disabled. Accordingly, this case does not address the issues that arise when a disabled child reaches the age of majority.

[18]See Act of Mar. 12, 1987, ch. 39, § 1, 1987 Tenn. Pub. Acts 47.

[19]The adoption of the Child Support Guidelines rendered the practice of prorating child support obsolete. The child support formula in the guidelines is based on percentages applicable to the number of children being supported.

[20]To the extent that *State ex rel. Parker v. Parker* requires a different result, we decline to follow it.

determining the amount of Mr. Lichtenwalter's support arrearage was not a retroactive modification of any earlier child support order. Rather, it was an appropriate application of the settled legal principle that a parent's legal duty to support their child ends when the child becomes emancipated. Accordingly, the substitute judge did not run afoul of Tenn. Code Ann. § 36-5-101(f)(1).

The courts must be mindful of the costs of litigation today and should adopt procedures intended to reduce these costs when possible. *See* Tenn. R. Civ. P. 1 (directing the courts to construe the procedural rules to secure "the just, speedy, and inexpensive determination of every action"). When parents have only one child, there is little need to impose upon the parents and the courts the burden and expense of obtaining an order that simply confirms that the obligor parent's child support obligation has ceased because the child is no longer entitled to support. However, when more than one child is involved and the order or judgment does not specifically address the effect of emancipation on the child support obligation, it may be prudent to request a modification of the order to make sure that the parents and the court have the same understanding of the obligor parent's prospective child support obligation. However, even in that circumstance, the courts may calculate and ascertain the obligor parent's obligation based on the date that the child became emancipated rather than on the date that the petition was filed.

**IV.**

We vacate the portion of the December 1, 2003 order declining Ms. Lichtenwalter's request for the child support arrearage. We remand the case with directions to enter a judgment consistent with this opinion against Mr. Lichtenwalter for $64,529 and for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal in equal proportions to Pamela C. Lichtenwalter and her surety and to Chris Edward Lichtenwalter for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.